Angel CLAUDIO, Petitioner,

v.

Charles SCULLY, Superintendent,
Greenhaven Correctional Facility,
et al., Respondents.

No. 89 CV 3410 ERK.

United States District Court,
E.D. New York.

April 30, 1992.

See also 130 A.D.2d 759, 515 N.Y.S.2d 845.

Proskauer Rose Goetz & Mendelsohn by William E. Hellerstein, New York City, for petitioner.

Richard Brown, Dist. Atty., Queens County by John Castellano, Asst. Dist. Atty., Kew Gardens, N.Y., for respondents.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

In the early morning hours of May 15, 1980, Steven Zweikert was returning home from a high school prom. As he emerged from the subway in Queens at about 4:00 a.m., he was followed and accosted by four youths. Among them was the petitioner, Angel Claudio, who brandished a gun. When one of the boys demanded money, Steven tried to wrest the gun from Claudio and in the struggle was fatally shot. Claudio and his cohorts fled the scene.

On May 21, 1980, the police were advised that an individual named Andrew Boyle had information about the murder. In response to police questioning, Boyle told the police that on May 14, 1980, between 6:00 and 8:00 p.m., he was in a "green mustang" with some other boys, one of whom had a gun. Boyle was then shown several photos. He identified Angel Claudio as the one with the gun. Claudio had previously been picked up for questioning by the police about the murder. After denying any involvement in the crime, he was released.

As a result of this encounter with the police, Claudio consulted the yellow pages and called attorney Mark Heller on May 21, 1990. Claudio met with Heller the next day and retained him as his attorney. After a discussion with Heller, Claudio agreed to turn himself in to the Queens District Attorney, John J. Santucci. Although some conflict existed as to the advice Heller gave to Claudio, the trial court found that Heller did not advise him of the seriousness of the charges he faced or his available defenses. Rather, he urged Claudio to surrender, explaining that Claudio might be able to obtain probation if he did so. When they arrived at the District Attorney's Office later that afternoon, however, Santucci informed Heller that there would be no plea bargain. Heller did not relay this information to his client. Instead, he advised Claudio to make a statement.

In the presence of his attorney, and after *Miranda* warnings were given, Claudio indicated that he wanted to confess because he was so troubled by what had happened that he was unable to eat or sleep. Claudio gave the following account of the events of May 15, 1980. He and his friends were in a car when they saw Steven Zweikert exiting the subway. One of Claudio's friends asked him to retrieve a gun that had been placed under the seat. The group then got out of the car and followed Steven down the street. Claudio pointed the gun at Steven while another demanded money. When Steven tried to grab the gun from Claudio, it accidentally discharged, fatally striking Steven in the chest. Claudio and his friends fled empty-handed.

Before trial, a newly appointed attorney moved to suppress the confession on the ground that Claudio had been denied effective assistance of counsel. Although the motion was granted by the trial judge, the Appellate Division held that Claudio's Sixth Amendment right to counsel had not attached at the time of his confession. Accordingly, the confession could not be excluded even if it was the result of Heller's foolish advice. In addition, although the issue had not been raised by the parties, the Appellate Division determined that Heller's conduct did not violate Claudio's right to counsel under the New York State Constitution. *People v. Claudio*, 85 A.D.2d 245, 447 N.Y.S.2d 972 (2d Dept.1982). The New York Court of Appeals affirmed the Appellate Division's holding that the Sixth Amendment had not been violated and that Claudio's confession should not have been suppressed. *People v. Claudio*, 59 N.Y.2d 556, 466 N.Y.S.2d 271, 453 N.E.2d 500 (1983). Because Claudio failed to raise the issue in either the Court of Appeals, the Appellate Division or in his suppression

motion, the Court of Appeals declared that it had "no occasion consider the application of the state constitution to defendant's situation." 59 N.Y.2d at 560 n. 1.

Claudio was tried and convicted of the crimes of murder, attempted robbery and possession of a weapon. The Appellate Division affirmed the conviction, although it held that the trial court erred in imposing consecutive rather than concurrent sentences. Accordingly, it modified petitioner's sentence to 25 years to life. *People v. Claudio*, 130 A.D.2d 759, 515 N.Y.S.2d 845 (2d Dep't 1987). Judge Hancock denied Claudio's application for leave to appeal to the Court of Appeals. *People v. Claudio*, 70 N.Y.2d 873, 523 N.Y.S.2d 501, 518 N.E.2d 12 (1987).

After exhausting his post-conviction appeals, Claudio filed this petition for a writ of habeas corpus. Subsequently, while proceedings on this petition were in abeyance, Claudio sought a writ of error *corum nobis* from the New York Court of Appeals on the ground that he had been denied effective assistance of counsel by his appellate attorney's failure to argue to the Court of Appeals that the suppression of his confession was mandated by the New York State Constitution. The petition was dismissed on the ground that there was "no authority for initiating such a writ in the Court of Appeals." *People v. Claudio*, 77 N.Y.2d 988, 571 N.Y.S.2d 899, 575 N.E.2d 385 (1991). After this unsuccessful effort to obtain relief from the Court of Appeals, Claudio again pressed his petition here. The petition, which raises four separate issues, is denied for the reasons that follow.

(1)

■ Petitioner argues that his confession should have been suppressed because it was the result of his attorney's ineffective advice. This claim must be rejected because the Supreme Court has held that a defendant cannot claim that he was denied

the effective assistance of counsel in a proceeding in which he is not entitled to counsel under the Sixth Amendment. *Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); *Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). The Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated...." *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). No such proceeding had been commenced when petitioner confessed.

*Commonwealth v. Moreau*, 30 Mass. App.Ct. 677, 572 N.E.2d 1382 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 915, 116 L.Ed.2d 815 (1992), upon which petitioner relies, does not provide a sound basis for a contrary holding. The Appeals Court there held that a defendant who was subject to post-arrest custodial interrogation did not enjoy a right to counsel under the Sixth Amendment. The Appeals Court, however, held that the defendant was "entitled to the aid of counsel to protect his Fifth Amendment privilege against self-incrimination under *Miranda v. Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966); *United States v. Gouveia*, 467 U.S. 180, 188 n. 5 [104 S.Ct. 2292, 2297 n. 5, 81 L.Ed.2d 146] (1984)." *Moreau*, 572 N.E.2d at 1384. Accordingly, it concluded that the defendant was entitled to a hearing on his claim that his lawyer was ineffective because he advised him to make a post-arrest confession. *Id.* at 1386.

■ Unlike the defendant in *Moreau*, it is hardly clear that petitioner was subject to the kind of custodial interrogation that would entitle him to the assistance of counsel under *Miranda v. Arizona*. *See Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983).[1] There is a more com-

---

1. The cases cited in the text hold that a suspect who voluntarily goes to a police station and submits to interrogation is not in "custody." By appearing at the District Attorneys Office with counsel, however, petitioner may be deemed to have agreed to speak only on the condition that

he could do so with the assistance of counsel. Under these circumstances, he may arguably have been entitled to the aid of counsel to protect his Fifth Amendment privilege, even if he was not technically in "custody." *But cf. Rachlin v. United States*, 723 F.2d 1373, 1378 (8th

pelling reason, however, for rejecting petitioner's argument that he was denied the effective assistance of counsel to which he claims he was entitled. While *Miranda v. Arizona* holds that a suspect who is subject to custodial interrogation is entitled to counsel "to protect the Fifth Amendment privilege against self-incrimination rather than to vindicate the Sixth Amendment right to counsel," *United States v. Gouveia*, 467 U.S. at 188 n. 5, 104 S.Ct. at 2297 n. 5, "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). Accordingly, an attorney who ensures that his client has not been compelled to speak effectively performs the role that the Supreme Court envisioned for him in *Miranda*.

Particularly apposite here is the discussion in *Miranda* concerning the advice an attorney would give a suspect and the role he would play during an ensuing interrogation. Chief Justice Warren observed that, if a suspect asked to speak to an attorney before submitting to a custodial interrogation, the "attorney may advise [him] not to talk to police until he has had an opportunity to investigate the case, or [the attorney] may wish to be present during any police questioning." *Miranda*, 384 U.S. at 480, 86 S.Ct. at 1631.

> If the accused decides to talk to his interrogators, the assistance of counsel can mitigate the dangers of untrustworthiness. With a lawyer present the likelihood that the police will practice coercion is reduced, and if coercion is nevertheless exercised the lawyer can testify to it in court. The presence of a lawyer can also help to guarantee that the accused gives a fully accurate statement to the police and that the statement is rightly reported by the prosecution at trial.

*Id.* at 470, 86 S.Ct. at 1626.

"The Court's vision of a lawyer 'mitigating the dangers of untrustworthiness' by witnessing coercion and assisting accuracy is largely a fancy; for if counsel arrives there is rarely going to be a police station

confession." *Miranda v. Arizona*, 384 U.S. at 516 n. 12, 86 S.Ct. at 1649 (Harlan, J., dissenting). Nevertheless, Chief Justice Warren's "vision" of the role of counsel is fundamentally consistent with the premise of the *Miranda* majority that a suspect is entitled to counsel to prevent law enforcement officers from coercing a confession and not to prevent a defendant from confessing voluntarily. Indeed, the Chief Justice emphasized that "[c]onfessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." 384 U.S. at 478, 86 S.Ct. at 1630.

The situation would be otherwise if petitioner had been advised foolishly to take the stand at his trial and confess. While he could not have alleged that he was compelled to be a witness against himself, he could have argued that he was deprived of the effective assistance of counsel. Unlike a defendant at a trial, who is entitled to the effective assistance of counsel, "to ensure that the prosecutor's case encounters 'the crucible of meaningful adversarial testing,'" *Moran v. Burbine*, 475 U.S. 412, 430, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986) (quoting *United States v. Cronic*, 466 U.S. 648, 656, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984)), petitioner was entitled to the presence of counsel when he was interrogated only "in order to protect the Fifth Amendment privilege" against self-incrimination. *Miranda*, 384 U.S. at 470, 86 S.Ct. at 1626. Accordingly, his voluntary confession was not subject to suppression merely because his attorney gave him bad advice. *See Colorado v. Connelly*, 479 U.S. at 170, 107 S.Ct. at 523; *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985).

There is a suggestion here that it is somehow unjust that petitioner should suffer because of the incompetent advice of his attorney. The answer, to quote the words of Judge Keating in a related context, is that while petitioner may not have been fortunate enough to have chosen competent counsel, "[t]his is a wholly different

Cir.1983); *United States v. Zazzara*, 626 F.2d 135, 137–38 (9th Cir.1980).

thing from talking about justice." *People v. McQueen*, 18 N.Y.2d 337, 350, 274 N.Y.S.2d 886, 221 N.E.2d 550 (1966) (Keating, J. concurring). Petitioner, it should be recalled, murdered Steven Zweikert, a young man at the threshold of his adult life. Petitioner's guilt was established by a confession that was freely and voluntarily given. If his attorney had given petitioner the sound advice to which he claims he was entitled, he would have gotten away with murder.

The Supreme Court recently observed in *McNeil v. Wisconsin*, that "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good, [without which] society would be the loser. Admissions of guilt resulting from valid *Miranda* warnings 'are more than merely "desirable" they are essential to society's compelling interest in finding, convicting and punishing those who violate the law.'" — U.S. —, 111 S.Ct. 2204, 2210, 115 L.Ed.2d 158 (1991) (quoting *Moran v. Burbine*, 475 U.S. at 426, 106 S.Ct. at 1143). This language applies with equal force here.

### (2)

■ Petitioner argues, alternatively, that his confession should have been excluded because under New York law he was entitled to the effective assistance of counsel at the time he confessed. Because this argument would not provide a basis for habeas corpus relief, petitioner argues that he was deprived of the effective assistance of counsel by virtue of the failure of his assigned counsel to rely on New York law during the pretrial and appellate proceedings relating to the suppression of his confession. This argument fails because petitioner cannot meet his burden of demonstrating that "the neglected claim would have [had] a reasonable probability of success on appeal." *Heath v. Jones*, 941 F.2d 1126, 1132, *reh'g en banc denied*, 948 F.2d 729 (11th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 981, 117 L.Ed.2d 144 (1992). On the contrary, it seems clear that the suppression of petitioner's confession was not required by New York law.

Article I of the New York State Constitution provides in pertinent part that "[i]n any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him." N.Y. Const., Art. 1, § 6 (McKinney 1982). While this clause ensures a defendant the right to the assistance of counsel "in any trial in any court," the New York Court of Appeals has largely ignored this limiting language and has held that, under certain circumstances, a suspect may be entitled to the assistance of counsel even if he has not been charged with a crime. *See People v. Donovan*, 13 N.Y.2d 148, 243 N.Y.S.2d 841, 193 N.E.2d 628 (1963), *People v. Skinner*, 52 N.Y.2d 24, 436 N.Y.S.2d 207, 417 N.E.2d 501 (1980). *See also People v. Cunningham*, 49 N.Y.2d 203, 424 N.Y.S.2d 421, 400 N.E.2d 360 (1979). If such a suspect is interrogated without his attorney present, any resulting confession will be excluded from evidence at trial.

In this very case, however, the Appellate Division raised the issue *sua sponte* and held that petitioner's confession was not subject to this exclusionary rule. While it acknowledged that petitioner was entitled to the assistance of counsel when he confessed, the Appellate Division distinguished this case from those in which a suspect was questioned without a lawyer:

> *People v. Donovan*, 13 N.Y.2d 148 [243 N.Y.S.2d 841, 193 N.E.2d 628], and its progeny require that the authorities refrain from questioning a defendant or suspect outside of the presence of his attorney absent a waiver of his rights made in the presence of counsel. We see no reason to require, as is indeed required in instances where judicial proceedings have commenced, that the courts go beyond the presence of counsel and examine the quality of his advice. Uniformly, cases which examine the effectiveness of counsel involve situations in which the State, usually through its Judges, has failed in its duty to oversee the criminal process and to discern and prevent ineffective representation.... This factor of judicial involvement is not present in a case such as this, where the

claim of incompetence focuses on events prior to any judicial proceedings. 85 A.D.2d at 257–58, 447 N.Y.S.2d 972 (footnotes omitted). Accordingly, although "Heller's advice may have been egregious," it did not by itself require the suppression of the confession because Heller's "actions did not occur in the context of a trial or other proceeding wherein a Judge should have been aware of it and corrected it." *Id.* at 258, 447 N.Y.S.2d 972.

The Appellate Division then considered and rejected the argument that law enforcement officers should be required to assess the competency of counsel's advice at the time a confession is taken. The considerations of policy that were cited in support of this holding need not be repeated here. Suffice it to say that the Appellate Division construed the New York Constitution to require no more than that law enforcement officers respect a suspect's choice to deal with them through an attorney. *Id.* at 260, 447 N.Y.S.2d 972.

Shortly after the Appellate Division's decision and before it decided petitioner's appeal, the New York Court of Appeals decided *People v. Beam*, 57 N.Y.2d 241, 455 N.Y.S.2d 575, 441 N.E.2d 1093 (1982), in which it held that a suspect's right to counsel had not been violated where, on the advice of counsel, he voluntarily submitted to police interrogation.[2] The Court of Appeals declared that once the police have been advised that the suspect has, upon the advice of counsel, waived the right to remain silent, there is "no obligation on the part of the police to seek some form of independent assurance that the decision of the suspect and his attorney is [ ] good advice." *Id.* at 253, 455 N.Y.S.2d 575, 441 N.E.2d 1093.

Petitioner argues that *Beam* is distinguishable because in that case the attorney's poor advice was a result of the defendant's deliberate failure to disclose the true nature of the police interrogation. Petitioner's Memorandum at 40. The fact that the defendant "misinformed his attorney as to the nature of the incident about which the police were seeking to question him" did provide additional support for the result in *Beam*, but the holding did not turn on the defendant's misrepresentation to his attorney. *Id.* at 254, 455 N.Y.S.2d 575, 441 N.E.2d 1093. The Court of Appeals, instead, made it plain that "[w]hen a person has had the benefit of counsel and then chooses to waive one of his rights, the police are not required to question the validity of that decision as long as they are assured that the decision was made in consultation with the suspect's attorney." *Id.* at 253, 455 N.Y.S.2d 575, 441 N.E.2d 1093. Indeed, the Court of Appeals concluded its opinion by stating that "as long as the police honored the defendant's right to counsel, and determined that he was speaking with them on advice of counsel, the defendant was afforded all the protections encompassed by the constitutional right to counsel." *Id.* at 255, 455 N.Y.S.2d 575, 441 N.E.2d 1093.

*Beam* is the only Court of Appeals case dealing with effectiveness of attorney advice in such preliminary encounters with law enforcement. Even if it left room to argue that an attorney's "woefully inadequate" advice to confess at a pre-indictment stage denies a suspect effective assistance of counsel, petitioner has failed to meet his burden of demonstrating that it is reasonably probable that the Court of Appeals would have accepted this argument.

(3)

▮ Petitioner argues that the trial court's refusal to call the District Attorney as a witness on the issue of the voluntariness of his confession violated his Sixth Amendment right to compulsory process. While the Compulsory Process Clause guarantees a defendant the right to call witnesses "relevant and material to the defense," *Washington v. Texas*, 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967), it does not eliminate a trial court's " 'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant,' or

---

**2.** The Court of Appeals decided *People v. Beam* on October 19, 1982, after the Appellate Division decision in *Claudio* on March 15, 1982 and before the Court of Appeals decision in *Claudio* on July 7, 1983.

poses an undue risk of 'harassment, prejudice [or] confusion of the issues.'" *Crane v. Kentucky,* 476 U.S. 683, 689–90, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) (quoting *Delaware v. Van Ardsall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)).

The testimony of the District Attorney would have been repetitive of the testimony given by his Chief Assistant. Petitioner argues that Santucci's testimony was necessary to demonstrate that Heller was a "publicity hungry attorney" who was motivated to obtain his client's confession solely for his own interest. This point was sufficiently made with the testimony of Chief Assistant Fisch, who was present at the meetings between Mr. Santucci and defendant's attorney Heller. Fisch testified at trial that "no promises were made to Mark Heller in exchange for petitioner's confession, that Heller appeared at a press conference with Santucci and that he could not have done so had Santucci not invited him." Petitioner's Memorandum of Law at 20. Indeed, in arguing that Santucci would have provided additional information, petitioner points to facts that were brought to Santucci's attention by Fisch. *See* Petitioner's Memorandum of Law at 50.

The only information cited by petitioner that would add anything to Fisch's testimony is Santucci's statement at the preliminary hearing that it was the belief of one of the assistants in his office that Heller's conduct was improper and that Heller was motivated by publicity. This hearsay statement, was, at most, marginally related to the issue of the confession's voluntariness or reliability. Moreover, because petitioner did not take the stand to explain why he confessed or to deny his guilt, it is inconceivable that Santucci's profert testimony, if it had been admitted, would have caused the jury to disregard petitioner's confession and acquit him.

(4)

■ The evidence at trial included the preliminary hearing testimony of Andrew Boyle, who had died prior to trial. In his hearing testimony, which was read to the jury, Boyle stated that on the evening of May 14, 1980 his friend "Buck" and Clau-

dio, who was sitting in the backseat, drove up to Boyle's house in a green Mustang. After Boyle got in the car, Buck told him that they were planning a robbery, and asked Boyle if he wanted to join them. Sometime during the car ride he saw Claudio holding a gun. Boyle left the car at about 8:00 that evening and did not participate in the robbery.

■ Petitioner argues that the admission of this testimony violated the Confrontation Clause because the statement was not sufficiently trustworthy. Where an out-of-court statement falls within a "firmly rooted hearsay exception," however, the Confrontation Clause requires no further inquiry into its reliability. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990). No confrontation violation occurred here because Boyle's statement was admissible under the former testimony exception, which is "one of the most firmly rooted" exceptions to the hearsay rule. *United States v. Salim,* 855 F.2d 944, 955 (2d Cir.1988). *See also United States v. Zannino,* 895 F.2d 1, 5 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990); *United States v. Kelly,* 892 F.2d 255, 262 (3d Cir.1989), *cert. denied, Gifford v. United States,* — U.S. ——, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990). Pursuant to that exception the statement of an unavailable declarant is admissible in a criminal case where the party against whom the testimony is offered has "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed. R.Evid. 804(b)(1). Here petitioner had the opportunity to and did cross-examine Boyle at the preliminary hearing on the very issue for which the testimony was introduced at trial—the identification of petitioner.

Petitioner argues that because *Wade* hearing testimony is not admissible as former testimony in New York, Boyle's testimony did not fall within a firmly rooted hearsay exception. Petitioner's Memorandum of Law at 55. The question here, however, is not the basis upon which the out-of-court statement was actually admit-

ted, but whether its admission offends the Confrontation Clause. On the facts here, there is no basis for such a claim. *See Roberts,* 448 U.S. at 70–73, 100 S.Ct. at 2541–42.

### Conclusion

Accordingly, for the foregoing reasons, the petition for a writ of habeas corpus is denied. Petitioner's application for a certificate of probable cause is granted.

I wish to acknowledge my appreciation to Professor William E. Hellerstein of Brooklyn Law School and Proskauer Rose Goetz & Mendelsohn, the law firm with which he is associated, for their extraordinarily able *pro bono* representation of the petitioner.

SO ORDERED: