**UNITED STATES of America**

v.

**YOU HONG CHEN, Defendant.**

**No. 99CR.1155(DC).**

United States District Court,
S.D. New York.

July 14, 2000.

Mary Jo White, United States Attorney for the Southern District of New York by Dani R. James, Assistant United States Attorney, New York, NY, for the United States of America.

Leonard F. Joy, the Legal Aid Society, Federal Defender Division, by Mark B. Gombiner, New York, NY, for Defendant You Hong Chen.

### *MEMORANDUM DECISION*

CHIN, District Judge.

In this case, defendant You Hong Chen is charged with smuggling aliens for private financial gain and conspiracy to transport illegal aliens. Chen moves to suppress his post-arrest statements on the grounds that his waiver of his *Miranda* rights was not knowing and intelligent because his lawyer at the time—an attorney who was not experienced in federal criminal matters—failed to give him proper legal advice. I conducted an evidentiary hearing on April 17 and 18, 2000 and the

parties thereafter submitted supplemental briefs. For the reasons set forth below, the motion is denied. The following constitute my findings of fact and conclusions of law.

### THE FACTS

On April 19, 1999, Chen and two other men were arrested by border patrol agents aboard a train in Montana. The three men admitted that they were citizens of the People's Republic of China and that they had entered the country illegally. After being transferred with the two others to an Immigration and Naturalization Service ("INS") detention facility in Colorado, Chen was released on a $7,500 bond. He told the INS that he would be traveling to and staying in New York City.

On August 3, 1999, the Government filed a complaint against Chen in the Southern District of New York for smuggling illegal aliens into the United States. A warrant was issued for his arrest.

After trying unsuccessfully to locate Chen, Special Agent Anthony Scandiffio of the INS wrote a letter to Chen purporting to ask him to come to INS offices to retrieve his bond money. On August 27, 1999, in response to the letter, Scandiffio received a telephone call from John Zhang, an attorney, who stated that he was calling on behalf of Chen. Scandiffio asked Zhang to come into the INS offices with Chen and the two did so later that day.

Zhang and Chen were met at INS offices at 26 Federal Plaza by Scandiffo and Special Agent Brett Dreyer. While they were waiting for an interpreter for Chen, Scandiffo and Dreyer spoke with Zhang in the hallway, outside the presence of Chen. They told Zhang that they had a warrant for Chen's arrest, that they intended to take Chen over to the District Court to be presented in front of a magistrate judge, that Chen was the first person in the case to be arrested, and that they felt Chen had a "good opportunity to help himself" by cooperating. (Tr. at 5). Zhang understood at that point that Chen had no obli-

gation to speak to the agents, but that he could if he wanted to do so.

At some point, Zhang spoke with Chen alone for five or ten minutes. Zhang told Chen what the agents had said. After the interpreter arrived, Zhang, Chen, the two agents, and the interpreter went into an interview room. The interpreter read Chen his *Miranda* rights in Chinese (the Mandarin dialect) off an INS form. Thereafter, Chen made certain statements, but Scandiffo concluded that Chen was not being truthful. Scandiffo told Chen and Zhang that there was no point in continuing if Chen was not going to be truthful. (Tr. 8).

At that point, Zhang asked to speak with Chen alone. The interpreter and both agents left the room. At some point Zhang discussed with Chen his *Miranda* rights. In fact, Zhang explained the *Miranda* rights to Chen in Chinese. He told Chen that if he wanted to cooperate, "maybe it's a good time," but he also told Chen that if he did not want to talk to the agents then, there would be "no disadvantage" and he would have an opportunity to cooperate in the future. (Tr. 55). Zhang never told Chen, in words or substance, that he had no choice but to talk to the agents. (Tr. 55).

After half an hour, a new interpreter appeared. Thereafter, Zhang came out of the room and stated that Chen was prepared to continue and to speak truthfully. The agents and the new interpreter went back into the room. The new interpreter spoke Cantonese rather than Mandarin, but Chen was able to communicate with him. In response to a question from Scandiffo, Chen stated that he understood the rights that had been read to him. He stated that he understood the waiver of rights form and he signed it. The two agents started questioning Chen and he answered their questions. The interview lasted about an hour.

At the time of the interview, Zhang had been practicing law for only approximately twenty months. His practice was a gener-

al one, with one-third of his work in immigration law. He had tried five to ten nonjury criminal cases in state court. He had no experience doing criminal cases in federal court and was not qualified to represent a defendant in a felony criminal matter in federal court. He acknowledged, for example, that he was not "very familiar" with the sentencing guidelines and did not know what a proffer agreement was. (Tr. 39). Zhang met Chen for the first time a few days before they met the agents at INS. Zhang and Chen generally spoke to each other in Mandarin and they had no difficulty understanding each other. Chen showed Zhang the letter he had received from Scandiffio. He eventually left to consult with another attorney but came back to see Zhang at least two more times. He eventually retained Zhang for $500. Zhang agreed to go with Chen to INS and the two went to see Scandiffio on August 27th, as discussed above.

During the time at INS, Zhang explained Chen's rights to him and generally explained the situation to him, but he did not adequately represent him. For example, Zhang permitted Chen to answer the agents' questions even though he had did not have "any idea" what Chen was going to say, other than that Chen had previously told him he had not done anything "serious." (Tr. 61–62). He did not ask the Government for a proffer agreement but simply permitted Chen to speak.

### CONCLUSIONS OF LAW

■ I conclude that Chen's waiver of his Fifth Amendment right to remain silent was knowing, intelligent, and voluntary.

As an initial matter, I note that defendant's argument that his waiver was not knowing and intelligent is based solely on his Fifth Amendment right to remain silent and not on his Sixth Amendment right to effective assistance of counsel. Chen concedes that at the time of the interview, he did not have a Sixth Amendment right to counsel because formal adversary proceedings had not yet commenced. (Tr. 70–71; Def. Mem. at 12). As a result, no matter how deficient Zhang's performance might have been,[1] Chen cannot argue that he was deprived of his Sixth Amendment right to effective counsel. *See Claudio v. Scully*, 982 F.2d 798, 802 (2d Cir.1992) (*"Scully II"*) (rejecting habeas petitioner's Sixth Amendment ineffective assistance of counsel claim because formal proceedings had not commenced at time of confession).

Chen argues that his attorney's inadequate representation of him at the INS interview prevented him from making a knowing and intelligent waiver of his right to remain silent. Specifically, Chen claims that Zhang's failure to advise him as to the "ultimate question" of whether he should speak with the agents coupled with Zhang's conveyance of misinformation about the costs and benefits of speaking to law enforcement prevented him from fully understanding the nature of the right he was abandoning and the consequences of his decision to abandon it. Because of this ineffective assistance of counsel, Chen claims that he was deprived of the full opportunity to exercise the privilege against self-incrimination guaranteed to him by the Fifth Amendment.

1. As noted above, Zhang did not advise Chen as to the wisdom of speaking to Scandiffio and Dreyer; he merely told Chen that he could speak to the INS agents, but that he was not obligated to do so. The Second Circuit has upheld ineffective assistance of counsel claims in similar situations, where counsel failed to advise a defendant as to how the defendant should proceed. *See, e.g., United States v. Carmichael*, 216 F.3d 224, 225 (2d Cir.2000) (affirming district court's finding of ineffective assistance of counsel, where defendant's first lawyer merely described government's plea offer to defendant, but did not advise him whether he should accept the offer); *Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996) (finding ineffective assistance where counsel never gave petitioner any advice or suggestion as to whether to accept or reject plea offer and granting habeas petition), *cert. denied*, 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997).

A defendant may waive his Fifth Amendment privilege "provided [that] the waiver is made voluntarily, knowingly and intelligently." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The inquiry into the validity of the waiver "has two distinct dimensions." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). First, the defendant must waive his rights voluntarily, "in the sense that [the waiver] was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, the defendant must waive his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* "Only if the totality of the circumstances 'reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.'" *United States v. Male Juvenile,* 121 F.3d 34, 39–40 (2d Cir.1997) (quoting *Moran,* 475 U.S. at 421, 106 S.Ct. 1135).

Chen does not contest the voluntariness of his waiver. Indeed, it is clear from the record that Scandiffio and Dreyer did not engage in any improper conduct in procuring defendant's waiver, and therefore, there is no doubt that Chen's decision to waive his Fifth Amendment privilege was voluntary. *See, e.g., Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) ("Absent evidence that [defendant's] will [was] overborne and his capacity for self-determination critically impaired because of coercive police conduct, ... his waiver of his Fifth Amendment privilege was voluntary under this Court's decision in *Miranda.*") (internal quotations and citations omitted).

Turning to the second prong of the inquiry, I find that Chen's waiver was knowing and intelligent, under all of the circumstances. Chen was read the *Miranda* warnings in Chinese, in the presence of counsel. Chen's attorney also explained the *Miranda* rights to him in Chinese, outside the presence of the agents. After consulting with his attorney, Chen acknowledged that he understood those rights and the waiver of rights form, and he then signed the waiver form. Chen understood that he was not required to speak to the agents and that anything he did say could be used against him. Because he was aware of "both the nature of the right being abandoned and the consequences of the decision to abandon it," his waiver was knowing and intelligent.

The fact that Zhang may have failed to advise Chen as to the *wisdom* of speaking to the agents does not render Chen's waiver invalid. Under *Miranda,* a criminal suspect who is subject to custodial interrogation before his Sixth Amendment right has attached is entitled to counsel "'to protect the Fifth Amendment privilege against self-incrimination rather than to vindicate the Sixth Amendment right to counsel.'" *United States v. Gouveia,* 467 U.S. 180, 188 n. 5, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). A criminal suspect need not "know and understand every possible consequence of a waiver of the Fifth Amendment privilege," but need only understand that "he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Spring,* 479 U.S. at 574, 107 S.Ct. 851 (citations omitted). After being read the *Miranda* warnings and consulting with his attorney, Chen understood that he had the right not to speak to the agents. Zhang fulfilled the role envisioned by the *Miranda* Court by "ensur[ing] that his client [had] not been compelled to speak." *Claudio v. Scully,* 791 F.Supp. 985, 988 (E.D.N.Y.1992) ("*Scully I*"), *rev'd on other grounds,* 982 F.2d 798 (2d Cir.1992). Zhang's failure to advise Chen of all the ramifications of speaking to the agents did not negate the fact that Chen understood that he had the right not to speak.

Judge Korman rejected a similar argument in *Scully I* in denying petitioner's application for a writ of habeas corpus. There, the petitioner Claudio, a sixteen-

year-old suspected of murder, picked an attorney out of the yellow pages who urged him to surrender without explaining to him the seriousness of the charges he faced or his available defenses. The attorney later advised Claudio to make a statement to the District Attorney despite the fact that no plea offer would be forthcoming, and Claudio confessed to the murder. At the time of the interrogation, Claudio's Sixth Amendment right to counsel had not attached, and the police did not engage in any coercive conduct during the interrogation. In rejecting Claudio's argument that his confession should have been suppressed because it was the result of his attorney's ineffective advice, Judge Korman stated that "petitioner was entitled to the presence of counsel when he was interrogated only in order to protect the Fifth Amendment privilege against self-incrimination" and not to protect his Sixth Amendment rights. *Scully I*, 791 F.Supp. at 988 (internal quotations and citations omitted). Accordingly, the petitioner's "voluntary confession was not subject to suppression merely because his attorney gave him bad advice." *Id.*

The conclusion that Chen's Fifth Amendment rights were not violated is supported by the Supreme Court's recent· decision in *Dickerson v. United States*, —— U.S. ——, 120 S.Ct. 2326, 2328, 147 L.Ed.2d 405 (2000). In holding that *Miranda* was a constitutionally based decision, the Court rejected a statutory "totality of the circumstances" test of voluntariness, but acknowledged that "the requirement that *Miranda* warnings be given does not … dispense with the voluntariness inquiry." *Id.* at ——, 120 S.Ct. 2326, 2336. The Court observed, however, that " '[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was "compelled" despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.' " *Id.* (quoting *Berkemer v.*

*McCarty*, 468 U.S. 420, 433 n. 20, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

The *Berkemer* Court noted the advantages of *Miranda*'s bright-line rule:

> One of the principal advantages of [*Miranda*] is the clarity of that rule. "Miranda's holding has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible. This gain in specificity … benefits both the accused and the State alike."

*Berkemer*, 468 U.S. at 430, 104 S.Ct. 3138 (quoting *Fare v. Michael C.*, 442 U.S. 707, 718, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)). The "crucial advantage" of having a bright-line rule would be "substantially undermine[d]" if law enforcement agents were required to inquire into the quality of the advice provided by an attorney to a suspect. *Id.* at 430, 104 S.Ct. 3138.

 Law enforcement officers should not be required to "divine a defendant's motivation for speaking or acting as he did even though there be no claim that governmental conduct coerced his decision." *Colorado v. Connelly*, 479 U.S. 157, 165–66, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (reversing suppression of mentally ill defendant's spontaneous confession where no coercive police activity occurred). If defendant's argument were accepted, law enforcement agents would be put in the uncertain and untenable situation of having to evaluate a suspect's attorney's performance before ·interrogating that suspect, destroying the advantage of the clarity of the *Miranda* rule. If the accused has consulted with an attorney and indicated that he understands the rights he is giving up, no additional inquiry into the quality of counsel's advice is required.

Suppressing Chen's statements in the circumstances of this case—where the defendant was read his *Miranda* rights, discussed them with his attorney outside the presence of law enforcement, and acknowledged that he understood the protections he was giving up in signing the waiver—

"would serve absolutely no purpose in enforcing constitutional guarantees." *Connelly,* 479 U.S. at 166, 107 S.Ct. 515. One of the underlying purposes of the exclusionary rule is to "substantially deter future violations of the Constitution." *Id.* (citation omitted). As the law enforcement agents here did not violate Chen's rights, suppression of the statements would not serve to deter violations in the future.

In essence, Chen is cloaking a Sixth Amendment ineffective assistance of counsel claim in Fifth Amendment dress, while acknowledging that his Sixth Amendment rights had not attached. His arguments are rejected, and I conclude that the Government has established by a preponderance of the evidence that Chen knowingly, intelligently, and voluntarily waived his Fifth Amendment privilege against self-incrimination.

### CONCLUSION

Defendant's motion is denied. The parties shall appear before the Court on July 24, 2000, at 4:30 p.m. for a pretrial conference. The time from June 14, 2000 up to and including July 24, 2000 is excluded, in the interest of justice, pursuant to 18 U.S.C. § 3161(h)(8)(A).

SO ORDERED.