Angel CLAUDIO, Petitioner–Appellant,

v.

Charles SCULLY, Superintendent, Greenhaven Correctional Facility, Respondent–Appellee.

No. 205, Docket 92–2263.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1992.

Decided Dec. 28, 1992.

William E. Hellerstein, New York City (Proskauer Rose Goetz & Mendelsohn, of counsel), for petitioner-appellant.

John M. Castellano, Asst. Dist. Atty., Queens County, Kew Gardens, NY (Richard A. Brown, Dist. Atty., Tammy J. Smiley, Asst. Dist. Atty., of counsel), for respondent-appellee.

Before: OAKES, NEWMAN and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

Angel Claudio appeals from a judgment of the United States District Court for the Eastern District of New York, Edward R. Korman, *Judge*, denying a petition for a writ of habeas corpus. The district court determined that Claudio's Sixth Amendment right to counsel was not violated by his attorney's failure to raise an ineffective assistance of counsel claim under the New York Constitution during a pre-trial appeal to the New York Court of Appeals. For the reasons set forth below, we reverse, with directions. There was a reasonable probability that the neglected claim would have succeeded on appeal and counsel's failure to raise the claim fell outside the range of reasonably competent assistance.

## BACKGROUND

On May 15, 1980, at approximately 4:15 a.m., Steven Zweikert was shot to death during a robbery as he returned home from his high school prom. Four days later, as a result of an anonymous tip, police investigating the incident went to Claudio's home and asked that he accompany them to the police station for questioning. Claudio, who was sixteen years old, complied after his stepmother agreed to accompany him. At the station, Claudio told the police that he had been on his front stoop the night of the incident and had gone to bed around midnight. Claudio allowed himself to be photographed and was then taken home by the police.

On May 21, 1980, Claudio, and his cousin, David Erasquine, consulted the phone book to find legal help. They called the firm of Heller and Heller and left a message. Mark Heller returned their call and agreed to meet with them the next day in Brooklyn Criminal Court, where Heller had some business. As agreed, Heller met with Claudio and Erasquine and talked about Claudio's situation. Heller requested and received one dollar as a token retainer and explained that his fee would be approximately $5,000.

Heller then drove Claudio and his cousin to the Queens County District Attorney's Office in order for Claudio to surrender. Although there is conflicting testimony as to the circumstances surrounding this decision, Justice Kenneth Browne of the New York Supreme Court, Queens County, found Claudio's testimony to be more credible than Heller's. The findings were that Heller told Claudio to surrender and did not explain the seriousness of the charges that Claudio might face or his available defenses. The judge believed Claudio's testimony that he was told by Heller that, if he surrendered, he might receive probation and serve no jail time at all.

At the District Attorney's office, Heller, having left Claudio and Erasquine in a downstairs hallway, met with District Attorney Santucci and was told that there would be no plea bargain even if Claudio confessed. Heller did not share this information with Claudio but simply told him that he was still negotiating. After Heller's meeting with Santucci, Heller was approached by Assistant District Attorney Del Vecchio, who requested that Claudio give a statement. Heller, at first, refused, saying that they should "[j]ust book him and arraign him." Del Vecchio replied, "I want to talk to him, we can't book him and arraign him on nothing." Indeed, Santucci, Del Vecchio, and the other assistant district attorneys testified that without a confession, they had lacked sufficient evidence to charge Claudio with the Zweikert murder.

On Heller's recommendation, Claudio eventually gave his statement, confessing to the Zweikert murder. Heller actively participated in the questioning and in the District Attorney's press conference that was held afterward.

Claudio was indicted for the crimes of murder in the second degree, attempted robbery in the first degree, and criminal possession of a weapon in the second degree. Following the indictment, the court appointed Albert A. Gaudelli to represent Claudio. Justice Browne held the pre-trial evidentiary hearing alluded to above and granted Claudio's motion to suppress his confession on the ground that his Sixth Amendment right to effective assistance of counsel had been violated by attorney Heller's conduct. The prosecution appealed the court's decision on the pre-trial motion, pursuant to New York Criminal Procedural Law § 450.20(8), and the Appellate Division reversed. *People v. Claudio*, 85 A.D.2d 245, 447 N.Y.S.2d 972 (2d Dept.1982). The Appellate Division determined that Claudio's right to counsel under the Sixth Amendment of the United States Constitution had not attached because adversarial judicial criminal proceedings had not com-menced, citing *United States v. Zazzara*, 626 F.2d 135 (9th Cir.1980) and *Brown v. United States*, 551 F.2d 619 (5th Cir.1977). *Claudio*, 85 A.D.2d at 252, 447 N.Y.S.2d at 977.

Of particular importance to this case, the Appellate Division also addressed, *sua sponte*, the question whether Claudio's right to counsel had been violated under art. I, § 6 of the New York Constitution.[1] The court found that Claudio's right to counsel had attached according to a line of New York cases that "grew out of the need to protect suspects from prearraignment and preindictment police abuse." *Claudio*, 85 A.D.2d at 254, 447 N.Y.S.2d at 979. One of these cases, *People v. Skinner*, 52 N.Y.2d 24, 436 N.Y.S.2d 207, 417 N.E.2d 501 (1980), served as the primary basis for the *Claudio* court's finding. According to the *Claudio* court, *Skinner* stood for the proposition that "a person not yet in custody may not be questioned outside of the presence of his attorney about a matter under investigation when the interrogators know that he has retained an attorney to represent him in relation to the very subject being investigated." *Claudio*, 85 A.D.2d at 255, 447 N.Y.S.2d at 979. The *Claudio* court applied the *Skinner* rule to the facts of this case and determined that it was "clear that Claudio's right to counsel under [the New York] State Constitution had attached prior to his confession." *Id.* at 256, 447 N.Y.S.2d at 979.

However, the court decided that Claudio's constitutional rights had not been violated since the state constitutional right to counsel before the initiation of formal proceedings did not include a right to effective counsel. In reaching this conclusion, the *Claudio* court focussed exclusively on whether the police and prosecutors had a duty to determine if Claudio had received competent legal help before they questioned him. The court reasoned that it would be impractical and improper to require a law enforcement officer to judge

1. Art. 1, § 6 provides in pertinent part:
   In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him.
   N.Y. Const., Art. 1, § 6 (McKinney 1982).

the competency of legal advice, and, therefore, that Claudio did not have a meritorious claim under the New York Constitution. *Claudio*, 85 A.D.2d at 260, 447 N.Y.S.2d at 981.

On appeal, the Court of Appeals affirmed the Appellate Division's decision that Claudio's Sixth Amendment right to counsel had not attached prior to his confession. *People v. Claudio*, 59 N.Y.2d 556, 466 N.Y.S.2d 271, 453 N.E.2d 500 (1983). Claudio's counsel did not raise the Article 1, § 6 New York right to counsel claim on appeal even though it was the subject of lengthy discussion by the Appellate Division and had been argued and briefed by the state. As a result, the Court of Appeals did not reach the issue.[2]

Following the appeal, Claudio was tried before a jury, convicted on all the charges, and sentenced to a total of 35 years to life imprisonment. The conviction was affirmed by the Appellate Division, but the sentence was modified to 25 years to life. *People v. Claudio*, 130 A.D.2d 759, 515 N.Y.S.2d 845 (2d Dept.1987). Leave to appeal to the Court of Appeals was denied. *People v. Claudio*, 70 N.Y.2d 873, 523 N.Y.S.2d 501, 518 N.E.2d 12 (1987).

On October 13, 1989, Claudio filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York. The petition raised four issues, the first three of which are set out here as they are the same issues Claudio raises on appeal. First, Claudio contended that his Sixth Amendment right to counsel was violated when Attorney Gaudelli failed to raise the Article 1, § 6 ineffective assistance of counsel claim during his pre-trial appeal to the New York Court of Appeals. Second, Claudio asserted that Heller's conduct constituted a violation of his Sixth Amendment right to counsel. Third, Claudio argued that his Sixth Amendment right

to compulsory process was violated by the trial court's decision not to allow him to examine District Attorney Santucci during trial.

The district court denied Claudio's petition on April 3, 1992 and issued a corrected memorandum and order granting a certificate of probable cause on April 30, 1992. *Claudio v. Scully*, 791 F.Supp. 985 (E.D.N.Y.1992). First, the court determined that Claudio had not been prejudiced by his counsel's failure to raise the Article 1, § 6 claim because there was no reasonable probability that the argument would have succeeded. Second, the court found that Claudio had no Sixth Amendment claim based on Heller's advice prior to his confession because the right to counsel under the United States Constitution had not attached. Finally, the court decided that the refusal to allow Claudio to call Santucci as a witness was not a violation of the Compulsory Process Clause because Santucci's testimony would have been repetitive.

On this appeal, we reverse the district court on Claudio's first claim and affirm the district court's findings on the second and third claim.

## DISCUSSION

■ The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel." The right to counsel protected by the Sixth Amendment "is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). On appeal, Claudio argues that his right to effective assistance of counsel was violated on two separate occasions: first, by Heller's ineffective representation prior to his confession and, second, by Gau-

**2.** The court stated:
Defendant asserts only a violation of the Sixth Amendment of the United States Constitution, as applied to the States through the Fourteenth Amendment. Defendant does not claim before this court, nor did he do so at the suppression hearing or before the Appel-

late Division, that his right to counsel under the State Constitution has been violated. Therefore, this court has no occasion to consider the application of the State Constitution to defendant's situation.
*Claudio*, 59 N.Y.2d at 560 n. 1, 466 N.Y.S.2d at 272 n. 1, 453 N.E.2d at 501 n. 1.

delli's ineffective pre-trial representation before the Court of Appeals.

■ As a threshold matter, we must determine whether Claudio had a constitutional right to counsel at the relevant times during which he was represented by Heller and Gaudelli.[3] A defendant cannot prevail on an ineffective assistance of counsel claim when the constitutional right to counsel has not attached. *Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982). Claudio's ineffective assistance of counsel claim concerning Heller's representation fails to meet this threshold requirement. The Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated. . . ." *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). Despite the clear consensus among every court that has reviewed this case that Heller's conduct was egregious, formal proceedings had not commenced when Claudio confessed and, this claim, therefore, must be rejected.

■ Unlike Claudio's claim concerning Heller's pre-confession representation, the claim based on Gaudelli's representation does meet this threshold requirement. Clearly, formal proceedings had commenced against Claudio at the time of the pre-trial appeal. Our inquiry, however, does not end there. Although formal proceedings are a necessary condition for the attachment of the Sixth Amendment right to counsel, they are not sufficient. A defendant is not constitutionally entitled to the assistance of counsel in all pre-trial circumstances but only those considered "critical stages" in the proceedings. *See United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926–1932, 18 L.Ed.2d 1149 (1967); *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387 (1970); *see also Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158, 7 L.Ed.2d 114 (1961) ("critical stage" defined as a proceeding which may affect the whole trial).

■ Claudio's pre-trial appeal to the Court of Appeals was unquestionably a critical stage. District Attorney Santucci and the assistant district attorneys involved in this case have all testified that Claudio's confession was essential to the prosecution's case. In fact, under § 450.50 of the New York Criminal Procedure Law, the prosecution had to certify that the confession was critical to their case and that the case could not proceed without it before they could make a pre-trial appeal of Justice Browne's suppression order.[4]

The Supreme Court in *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), provides additional support for our determination that Claudio's right to counsel had attached at the time of his pre-trial appeal. The *Ross* Court compared the trial stage to the post-conviction appellate process, and decided not to extend the right to counsel to post-conviction discretionary appeals. The Court wrote that:

> it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a

**3.** Claudio argues that respondents waived the issue of whether there is a right to counsel for pre-trial appeals by not raising the question before the district court. We disagree and reach the merits of the issue. The cases cited by Claudio for his waiver proposition are distinguishable as they involve new claims rather than an additional argument relating to a point already under dispute. *See Kraebel v. Dep't of Hous. Preservation & Dev.*, 959 F.2d 395 (2d Cir.1992) *cert. denied*, —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992); *Grace Towers Tenants Ass'n v. Grace Hous. Dev. Fund Co.*, 538 F.2d 491 (2d Cir.1976); *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626 (2d Cir.1972).

**4.** Section 450.50 provides in pertinent part:

> In taking an appeal, pursuant to subdivision eight of section 450.20, to an intermediate appellate court from an order of a criminal court suppressing evidence, the people must file . . . a statement asserting that the deprivation of the use of the evidence ordered suppressed has rendered the sum of the proof available to the people with respect to a criminal charge which has been filed in the court either (a) insufficient as a matter of law, or (b) so weak in its entirety that any reasonable possibility of prosecuting such charge to a conviction has been effectively destroyed.

N.Y.Crim.Proc. Law § 450.50 (McKinney 1983).

judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. *Id.* at 610–11, 94 S.Ct. at 2443–44. Here, Claudio needed Gaudelli's assistance as a shield, not a sword. The prosecution initiated the appellate process at a time when Claudio's presumption of innocence remained intact.

■ Having determined that Claudio's right to counsel had attached at the time of his pre-trial appeal, we must still resolve whether Gaudelli's representation was constitutionally defective. A defendant is denied his federal constitutional right to the effective assistance of counsel when his attorney's conduct falls outside the wide range of "professionally competent assistance" and when there is a "reasonable probability" that, but for counsel's inadequate representation, the result of the proceeding would have been different.[5] *Strickland v. Washington,* 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2065, 2068, 80 L.Ed.2d 674 (1984). Although *Strickland* addressed the constitutional standard for ineffective assistance of counsel in the trial counsel context, our Circuit has also adopted the *Strickland* two-prong test in assessing the effectiveness of appellate counsel. *Abdurrahman v. Henderson,* 897 F.2d 71, 74 (2d Cir.1990). We begin first with the issue upon which the district court denied Claudio's claim, the issue whether there was a "reasonable probability"[6] that an Article 1, § 6 claim would have been successful before the New York Court of Appeals.[7]

■ New York constitutional law has been enormously supportive of right to counsel claims such as Claudio's. The New York Court of Appeals has consistently interpreted the right to counsel under the New York Constitution more broadly than the Supreme Court has interpreted the federal right to counsel. As the Court of Appeals declared, "[s]o valued is the right to counsel in this State, it has developed independent of its Federal counterpart. Thus, we have extended the protections afforded by our State Constitution beyond those of the Federal—well before certain Federal rights were recognized." *People v. Settles,* 46 N.Y.2d 154, 161, 412 N.Y.S.2d 874, 877, 385 N.E.2d 612, 615 (1978) (citations omitted).

■ Claudio's Article 1, § 6 claim had a reasonable probability of success despite the Appellate Division's decision to deny the claim. Interpreting a line of cases that culminated in *People v. Skinner,* the Appellate Division found that Claudio's state constitutional right to counsel had attached but the right was not violated because it did not include a right to effective assistance of counsel. We have serious doubts

---

**5.** The federal constitutional right to effective assistance of counsel may be violated by an attorney's failure to raise a meritorious state law claim or defense. *See Miller v. Keeney,* 882 F.2d 1428, 1435 (9th Cir.1989) (counsel not ineffective for omitting meritless state constitutional claim); *Parton v. Wyrick,* 704 F.2d 415, 416–17 (8th Cir.1983) (counsel not ineffective for omitting meritless state law claim); *Nero v. Blackburn,* 597 F.2d 991, 993–94 (5th Cir.1979) (counsel ineffective for omitting meritorious state law claim); *Laffosse v. Walters,* 585 F.Supp. 1209, 1212–13 (S.D.N.Y.1984) (counsel ineffective for filing *Anders* brief where nonfrivolous claims, including state law claims, available); *cf. McLeod v. Dugger,* 735 F.Supp. 1011, 1014–15 (M.D.Fla.1990) (prejudice arising from failure to raise venue claim on appeal evaluated according to state law).

**6.** In this context, "[a] reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

**7.** Respondents also argue that the Court of Appeals was procedurally barred from reaching the state constitutional claim because it was not the basis for the trial court's suppression order. This claim is undermined by the Appellate Division's decision to reach the state issue and respondent's own brief which argued the merits of the state claim before the Court of Appeals. Furthermore, the cases cited by respondents are distinguishable from the case before the court as they do not involve claims that are strongly related and based on the same set of facts. *See People v. Karp,* 76 N.Y.2d 1006, 565 N.Y.S.2d 751, 566 N.E.2d 1156 (1990); *People v. Goodfriend,* 64 N.Y.2d 695, 485 N.Y.S.2d 519, 474 N.E.2d 1187 (1984).

as to whether this is a correct interpretation of New York constitutional law. In particular, the Appellate Division's distinction between the right to counsel and the right to effective counsel has no basis in *Skinner* or other cases interpreting the New York Constitution.

The *Skinner* court extended the reach of the New York Constitution's right to counsel to situations where a person is not in custody but has retained counsel as a result of police investigation. As the court stated:

> In retaining an attorney specifically in response to repeated police-initiated contacts, defendant unequivocally indicated that he felt himself unable to deal with the authorities without legal assistance. In a real sense, he had activated his constitutional right to interpose an attorney between himself and the overwhelming power of the State.

*Skinner*, 52 N.Y.2d at 31–32, 436 N.Y.S.2d at 211, 417 N.E.2d at 505. The right to effective assistance of counsel appears to be at the heart of the *Skinner* court's decision to adopt a more expansive reading of the right to counsel. The court stated that its rule "simply recognizes the right and need of an individual to have a *competent* advocate at his or her side in dealing with the State." *Id.* at 29, 436 N.Y.S.2d at 209, 417 N.E.2d at 503 (emphasis added).

Similarly, the district court decision that there was no reasonable probability of success on appeal for Claudio's Article 1, § 6 claim is not supported by New York constitutional law. In reaching its decision, the district court relied almost exclusively on *People v. Beam*, 57 N.Y.2d 241, 455 N.Y.S.2d 575, 441 N.E.2d 1093 (1982), "the only Court of Appeals case dealing with effectiveness of attorney advice in such preliminary encounters with law enforcement." *Claudio*, 791 F.Supp. at 990.[8] *Beam* provides no better basis for the district court's finding that there was no reasonable probability of success than *Skinner*.

In *Beam*, the Court of Appeals considered the case of a defendant who had misinformed his attorney about the incident for which the police wanted to question him. Based on this misinformation, the attorney advised his client to talk with the police. The police knew he had an attorney, but reasonably concluded that he had waived his right to have counsel present during the questioning on the advice of his attorney and then had waived his right against compelled self-incrimination. The *Beam* court held that there is "no obligation on the part of the police to seek some form of independent assurance that the decision of the suspect and his attorney to waive the suspect's right to remain silent ... is good advice" and "[w]hen a person has had the benefit of counsel and then chooses to waive one of his rights, the police are not required to question the validity of that decision as long as they are assured that the decision was made in consultation with the suspect's attorney." *Beam*, 57 N.Y.2d at 253–54, 455 N.Y.S.2d at 581–82, 441 N.E.2d at 1099–1100.

The district court interpreted *Beam* to stand for a far broader proposition than is merited. *Beam*, as applied to this case, stands for the proposition that the police and prosecutors did not have a duty to question whether Claudio received competent advice from counsel before confessing. The *Beam* court, however, never reached the issue whether bad advice could serve as the basis for an Article 1, § 6 challenge in a preliminary encounter with the police. The issue was not addressed because counsel's advice in *Beam* was based on false information from his client and, given the context, the advice was not clearly wrong. As the *Beam* court noted, "there are occasions when the best counsel will lead a suspect to waive one of his rights." *Id.* at 254, 455 N.Y.S.2d at 582, 441 N.E.2d at 1099.

Both the Appellate Division decision and the district court's reliance on *Beam* confuse the right to the effective assistance of

---

**8.** *Beam* was decided on October 19, 1982, after the *Claudio* Appellate Division decision, which was decided on March 15, 1982, and before the *Claudio* Court of Appeals decision, which was decided on July 7, 1983.

counsel with the obligation of the State, in certain circumstances, to detect ineffective assistance. The dissent in the *Claudio* Court of Appeals decision emphasizes this problem.[9] As stated earlier, neither the majority nor dissent reached the Article I, § 6 claim, or discussed *Beam*, because Claudio's counsel did not raise the issue on appeal. Nevertheless, Judge Hugh Jones, in dissent, pointed out a serious fallacy in the Appellate Division's reasoning. *People v. Claudio*, 59 N.Y.2d at 563, 466 N.Y.S.2d at 274, 453 N.E.2d at 503. Judge Jones wrote:

> Although it is true that the court, and perhaps the prosecutor in extreme instances, has the obligation to protect the defendant from representation by his counsel which is perceived at the time to be incompetent, the constitutional right to representation by competent counsel is self-standing, to be protected independent of misconduct on the part of the People.

*Id.* at 566, 466 N.Y.S.2d at 276, 453 N.E.2d at 505 (citation omitted); *see also id.* at 567 n. 4, 466 N.Y.S.2d at 276 n. 4, 453 N.E.2d at 506 n. 4. Judge Jones' criticism of the Appellate Division is equally applicable to the district court's use of *Beam*. The district court mistakenly focussed on the state's obligation to determine the effectiveness of Claudio's counsel rather than Claudio's right to effective assistance of counsel.

The New York courts' treatment of state constitutional right to counsel claims, as seen in cases such as *People v. Skinner*, lends powerful support to Claudio's position that a state constitutional right to effective assistance of counsel begins once counsel has been retained in response to a police investigation. The Appellate Division's initial finding that Claudio's right to counsel had attached at the time Claudio retained Heller lends yet more credibility to this theory. Thus, we find that there was a reasonable probability that an Article 1, § 6 claim would have succeeded before the Court of Appeals.

Claudio meets the second requirement for an ineffective assistance of counsel claim as well. Gaudelli's failure to raise the state constitutional claim fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. No reasonably competent attorney should have missed the Article 1, § 6 claim, even though the Appellate Division ultimately rejected it. The Appellate Division raised the claim *sua sponte*, conceded the important issue that the right to counsel had attached, and addressed more attention to the state constitutional claim than it did to the federal issue. Moreover, as is discussed above, the Court of Appeals had an extraordinary history of broad readings of the right to counsel under the state constitution. Gaudelli's decision not to raise the claim cannot be viewed reasonably as a strategic decision. *Cf. Jones v. Barnes*, 463 U.S. 745, 753, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983) ("A brief that raises every colorable issue runs the risk of burying good arguments"). In fact, Gaudelli's brief to the Court of Appeals was nearly identical to the brief he submitted to the Appellate Division, and contained no new information or arguments to refute the Appellate Division decision. Thus, we find that, in light of all the circumstances, Gaudelli's representation of Claudio was professionally unreasonable and constitutionally defective.

■ Finally, we reach Claudio's third argument that his Sixth Amendment right to compulsory process was violated because the trial judge, Justice Agresta, refused to allow him to call District Attorney Santucci as a witness. Claudio maintains that Santucci's testimony concerning his conversations with Heller prior to the confession was relevant to the question whether Heller's undue pressure rendered the confession involuntary under New York law. *See* N.Y.Crim.Proc. Law § 60.45 (McKinney 1992). We do not believe that Claudio's right to compulsory process was violated.

---

**9.** It deserves mention that the two judges on the Court of Appeals who dissented in *Claudio* were in the majority in *Beam*.

We are not persuaded that the testimony of Santucci would materially differ from that which Claudio had the opportunity to elicit from the assistant district attorney who was in the office when the conversation between the District Attorney and Heller took place. Thus, Santucci's testimony was neither material nor vital to his defense. *See United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982); *United States v. Biaggi,* 705 F.Supp. 848, 849 (S.D.N.Y.1988).

## CONCLUSION

Accordingly, the judgment of the district court is reversed, and the case is remanded with directions to grant the petition, unless the state affords Claudio an opportunity to present the Article 1, § 6 state law claim to the New York Court of Appeals within sixty days from the date of our mandate.

JON O. NEWMAN, Circuit Judge, dissenting:

The majority has ruled that a lawyer fails to render the effective assistance of counsel guaranteed by the United States Constitution when he does not pursue before a state's highest court a state law claim rejected on the merits by a state's intermediate appellate court. Because I am unable to agree with that unprecedented ruling, I respectfully dissent.

Angel Claudio has twice received less than top-flight legal representation in the course of proceedings that led to his state court conviction for second-degree murder. First, his state court trial counsel failed to advise him fully before he confessed to the crime. That failure was arguably a violation of both his Sixth Amendment right to the effective assistance of counsel and his broader state law right protected by the New York constitution. The state trial court suppressed his confession on Sixth Amendment grounds, but the Appellate Division, on an interlocutory appeal by the prosecution, properly reversed the suppression order, since the confession had been made before the Sixth Amendment right to counsel had attached. *People v. Claudio,*

85 A.D.2d 245, 447 N.Y.S.2d 972 (2d Dep't 1982).

Though Claudio's state court appellate counsel had defended the suppression order only on Sixth Amendment grounds, the Appellate Division, on its own motion, elected to consider whether the confession had been obtained in violation of state law. The Appellate Division ruled that Claudio had a state law right to counsel when he confessed, *id.* at 256, 447 N.Y.S.2d at 979, but that this right assured him only the presence of counsel, rather than performance of counsel above some minimum level of professional competence, *id.* at 257–61, 447 N.Y.S.2d at 980–82. In the Appellate Division's view, the quality of counsel's representation, as a matter of state law, must meet standards of adequacy when rendered in court where judicial supervision is available, but standards of adequacy cannot be enforced with respect to legal services rendered in investigative proceedings where judicial supervision is less readily available. *Id.*

At that point, the second lawyering inadequacy occurred. Challenging the Appellate Division's reversal of the suppression order in an appeal to the New York Court of Appeals, Claudio's state court appellate counsel argued only that trial counsel's performance had violated Claudio's federal rights under the Sixth Amendment and failed to include in his appeal the claim that the confession violated Claudio's state law right to effective assistance of counsel. Though the state law claim had been adjudicated by the Appellate Division to be without merit, a majority of the panel hearing this habeas corpus appeal now concludes that the state law claim had sufficient likelihood of success that Claudio's state court appellate counsel denied him a federally protected right to the effective assistance of counsel by failing to argue the state law claim to the Court of Appeals.

This ruling unduly extends habeas corpus jurisdiction and the Due Process Clause. To reach such a ruling, the majority takes several steps that need to be separately identified.

1. *"Critical stage."* The majority holds that the appeal to the New York Court of Appeals from the Appellate Division was a "critical stage," *see United States v. Wade,* 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967), at which Claudio was entitled under the Due Process Clause to the effective assistance of counsel. I have no doubt that this appeal was an important stage, the outcome of which could be critical for Claudio. But whether it was a "critical stage" for Sixth Amendment purposes is uncertain.

The Supreme Court has ruled that whatever right to counsel exists at the post-conviction appellate stage of a state criminal case is secured directly by the Due Process Clause of the Fourteenth Amendment, rather than through incorporation of the Sixth Amendment, which protects the "trial-level right to counsel," *Evitts v. Lucey,* 469 U.S. 387, 392, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985); *see Ross v. Moffitt,* 417 U.S. 600, 608–11, 94 S.Ct. 2437, 2442–44, 41 L.Ed.2d 341 (1974); *Miller v. Keeney,* 882 F.2d 1428, 1431 n. 4 (9th Cir. 1989).[1] The Court has also ruled that there is no Due Process right to counsel in discretionary post-conviction appeals. *See Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991); *Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d

475 (1982). Claudio's appeal to the Court of Appeals was discretionary, but it was a pre-conviction appeal. The majority relies on *Ross v. Moffitt,* 417 U.S. at 610–11, 94 S.Ct. at 2443–44, where the Court noted the significant difference between having counsel prior to conviction "as a shield" and having counsel after conviction "as a sword." *Id.* I am not certain whether the Supreme Court would afford Sixth Amendment protection to a discretionary pre-trial appeal to challenge the lawfulness of a confession when such protection would not be available directly under the Due Process Clause to challenge the same confession on a discretionary post-trial appeal. But I will assume, for the argument, that the Sixth Amendment attached to the pre-trial discretionary appeal and consider the majority's subsequent steps.[2]

2. *Obligation to raise state law issues.* The majority next rules that a lawyer's failure to pursue on a state court appeal *a state law claim* can constitute a denial of federally guaranteed effective assistance of counsel. That is a significant ruling, not yet made by the Supreme Court,[3] nor by any prior decision of this Court. It is arguable that the federal guarantee of effective assistance of counsel, whether protected by the Sixth Amendment through the Due Process Clause or directly by that Clause,

1. The right appears to have originally been grounded on the Equal Protection Clause. *See Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

2. In considering whether the appeal to the New York Court of Appeals was a "critical stage" for purposes of a constitutional right to counsel, a third variable is arguably pertinent, in addition to whether the appeal is discretionary or of right, and whether it precedes or follows conviction. The third variable is whether the appeal is forced upon the defendant by the State or initiated by the defendant. The argument for considering the appeal to be a critical stage is stronger where the appeal is initiated by the State. In this case, the assessment of this third factor is complicated by the fact that the State initiated the appeal to the Appellate Division, but the defendant thereafter initiated the further appeal to the Court of Appeals.

3. Language in *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), gives

superficial support to the view that reasonable competence includes consideration of state law issues. In determining whether state appellate counsel's omission of a claim on direct appeal to a state supreme court was so incompetent as to constitute cause that would excuse procedural default, the Court quoted counsel's subsequent explanation that "'Virginia case law would [not] support our position at that particular time,'" *id.* at 531, 106 S.Ct. at 2664, and concluded that the decision not to pursue the claim was not incompetent "[v]iewed in light of Virginia law at the time [counsel] submitted his opening brief to the Supreme Court of Virginia," *id.* at 536, 106 S.Ct. at 2667. However, the claim omitted was a federal claim—that admission of psychiatric testimony violated the defendant's self-incrimination privilege protected by the Fifth and Fourteenth Amendments. *Id.* at 531, 106 S.Ct. at 2664. Though the matter is in some doubt, the Court appears to have concluded that counsel reasonably omitted a federal claim because prevailing state court decisions had previously rejected it. *See id.* at 540, 106 S.Ct. at 2669 (Stevens, J., dissenting).

assures state court defendants only effective assistance of counsel in enforcing the protections of federal law, leaving entirely to the states all questions as to whether counsel's performance was adequate to assure vindication of state law protections.

However, the few cases that have considered the issue, either explicitly or implicitly, have all ruled, or at least assumed, that counsel may be found ineffective for purposes of the federal Constitution by failing to pursue a state law claim in state court. Counsel was held ineffective for omitting a state law issue in *Nero v. Blackburn*, 597 F.2d 991, 993–94 (5th Cir.1979); *see also Laffosse v. Walters*, 585 F.Supp. 1209, 1212–13 (S.D.N.Y.1984) (semble) (counsel ineffective for filing *Anders* brief where non-frivolous claims, including state law claims, available), and in other cases, the adequacy of counsel has been assessed with reference to state law issues, though counsel was not deemed deficient. *See Miller v. Keeney*, 882 F.2d 1428, 1435 (9th Cir.1989); *Parton v. Wyrick*, 704 F.2d 415, 416–17 (8th Cir.1983).

Though the matter is not free from doubt, I agree with the majority that the federally guaranteed right to the effective assistance of counsel includes some obligation of counsel to assert claims and defenses grounded in state as well as federal law.

3. *Standard for assessing competence of appellate counsel.* The majority next considers the standard to be applied in determining whether counsel's failure to present a particular state law claim on appeal violates the federally protected right to effective assistance of counsel. The majority rules that the standard for assessing the competency of counsel in the trial context, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984), applies equally to the appellate context.[4] *Strickland* announced a two-prong test for assessing ineffective assistance of counsel claims in the pre-trial and trial context. The first prong concerns counsel's performance. The claimant must show that counsel's performance fell below "an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064, which means "simply reasonableness under prevailing professional norms." *Id.* The second prong concerns prejudice. The claimant must show a "reasonable probability" that reasonably competent assistance would have affected the outcome. *Id.* at 694, 104 S.Ct. at 2068.

I agree that the first prong of *Strickland* applies fully to the appellate context, but applying the second prong is unnecessary in the appellate context and risks both unfairness to habeas petitioners and excessive involvement of federal courts in state law issues. Though we have previously stated that both prongs of *Strickland* apply in the appellate context, *see Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990), that decision involved no application of the first prong of *Strickland*—the competency of appellate counsel—since the panel assumed, for purposes of the habeas appeal, that counsel's performance had been constitutionally deficient. *Id.* at 74. The objections to applying *Strickland's* second prong to the appellate context do not become apparent until a case like the pending one arises where the constitutional adequacy of appellate counsel needs to be assessed.

*Strickland's* second prong is unnecessary in the appellate context. The "reasonable probability of affecting the outcome" standard made very good sense in the context of the *Strickland* case, a challenge to

4. The Supreme Court has not yet decided this issue. In *Evitts* the Court ruled only that if the right to counsel applied to an appellate proceeding, the right included the right to effective assistance of counsel, but the Court left open the issue of whether the standards for assessing the competency of counsel at the appellate stage were the same as at the trial stage. Since the State did not challenge the finding of appellate counsel's incompetency, the Court said that it

"need not decide the content of appropriate standards for judging claims of ineffective assistance of appellate counsel. Cf. *Strickland v. Washington*, 466 U.S. 668, [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984); *United States v. Cronic*, 466 U.S. 648 [104 S.Ct. 2039, 80 L.Ed.2d 657] (1984)." *Evitts*, 469 U.S. at 392, 105 S.Ct. at 833. Arguably, the "cf." cite to *Strickland* implies that the appellate standard might be different.

counsel's performance at the investigation and trial stages of a criminal case. Since a trial cannot be reconvened and resumed to afford the defendant an opportunity to overcome counsel's misstep and secure a verdict unaffected by counsel's incompetence, the habeas court must make some reasoned assessment of the probability that competent lawyering would have affected the outcome.[5] However, in the context of deficient lawyering on appeal, there is no reason to speculate about the probability of a different outcome: the state appellate court remains fully available to adjudicate the claim that appellate counsel failed to present.

Thus, in the appellate context, there is no reason to apply the second prong of *Strickland*. If the performance of appellate counsel in omitting a state law issue was outside the range of reasonable profession-al competence, the habeas court can afford the State the opportunity to resume the appeal by granting a conditional writ that orders a new trial unless the state appellate court entertains and, in the absence of a procedural bar, adjudicates the previously omitted claim. Indeed, that is the remedy adopted by the Court in this case.[6]

It is arguable that some vestige of the second prong of *Strickland* should remain for the situation where appellate counsel was incompetent for failing to raise what would have been a winning claim but the claim, if sustained, would not have resulted in a reversal. But there is little point in making a separate "reasonable probability of affecting the outcome" analysis, since appellate counsel could not possibly be deemed to have performed outside the range of reasonable professional compe-

---

**5.** On the facts of *Strickland,* a death penalty case, it would have been possible to remedy the allegedly deficient performance of trial counsel without making a "reasonable probability of affecting the outcome" prediction since the deficiency occurred at sentencing rather than during the presentation of evidence before the jury. Thus, had counsel's performance been found deficient, it would have been possible to issue a conditional writ, conditioned upon the State's affording new counsel an opportunity to take whatever investigatory steps competent counsel should have taken and then to argue to the trial court judge that the death penalty should not be imposed. But the Supreme Court ruled, even in the context of deficient lawyering occurring at sentencing, that the habeas court is to make a prediction as to whether there is a reasonable probability that a conscientious sentencer would have imposed a different sentence. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068. The Court even imposed this prediction task on a habeas court in situations where a state appellate court performs the role of sentencer by independently reweighing the evidence pertinent to the penalty. *Id.*

Presumably, the Court was concerned that returning the matter for reconsideration by the same sentencer, after proper presentation by counsel, would not provide an adequate substitute for the decisionmaking that would have occurred if counsel had properly presented defendant's sentencing arguments at the initial sentencing. Yet, if the habeas court finds a reasonable probability that proper lawyering would probably have affected the sentencing, it is unlikely that the ultimate remedy would be anything more than resentencing. Thus, in *Strickland,* had counsel been considered deficient and had prejudice been found, the only consequence of the "probability" analysis, compared to omitting such analysis and returning the matter directly to the original sentencer, would have been resentencing before a different judge.

In any event, *Strickland's* use of the "probability of affecting the outcome" test, even for lawyering deficiencies occurring at sentencing, does not require a habeas court to make a similar prediction of likely success when the alleged deficiency is the failure to present a legal claim to a state appellate court. Unlike sentencing, which involves an aggregate weighing of a variety of factors, consideration of the omitted issue by the appellate court can readily be performed as effectively upon presentation by new counsel on a new or reinstated appeal as it could have been by the original counsel. Since the Supreme Court, subsequent to *Strickland,* without pausing to make a "probability of affecting the outcome" analysis, has approved the use of a conditional writ that returns an omitted appeal to a state court for its consideration, *see Evitts v. Lucey, supra,* I see no need to use the second prong of *Strickland* in any case where it is convenient and fair simply to return the case to the state court for further consideration, once it has been determined that counsel's omission of a legal claim was constitutionally deficient.

**6.** The second prong is also unnecessary in the appellate context if the omitted claim is grounded on federal law. If the habeas court determines that appellate counsel's omission of the federal issue was below the range of prevailing professional norms, the habeas court itself is competent to adjudicate the merits of the omitted claim.

tence by omitting an issue that would have been considered harmless error.

Applying the prejudice prong of *Strickland* to the appellate context is not only unnecessary, but it also risks altering the first prong by importing into the assessment of competency the "reasonable probability" language of the prejudice inquiry. Thus, in the pending case, the majority starts with the second prong and analyzes the issue omitted by the state court appellate counsel to see if it had a "reasonable probability" of success. Since *Strickland* used "reasonable probability" to measure the likelihood that a trial outcome would have been different (in order to assess prejudice from lawyering already determined to be deficient), it is ill-advised to press this same standard into service for the different task of determining whether counsel's performance was deficient.

In my view, the proper analysis for assessing a claim of ineffective *appellate* counsel is to determine initially whether the failure to pursue the omitted issue is outside the range of reasonable professional competence and, if so, whether there is at least a substantial argument that the alleged error would not be deemed harmless. Of course, in making a determination whether appellate counsel's omission of an issue was outside the range of reasonable professional competence, the habeas court will have to make some assessment of the merits of the omitted issue. Even if the issue can fairly be considered non-frivolous, its omission is not necessarily professional incompetence, in view of counsel's broad discretion to select from among available claims those thought more likely to be successful. *See Jones v. Barnes*, 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3312–14, 77 L.Ed.2d 987 (1983).

By invoking in the appellate context the "reasonable probability of affecting the outcome" standard from the trial context, the majority creates the risk, no doubt inadvertently, that some defendants will be denied an opportunity to have presented to state courts some state law issues that reasonably competent counsel would have asserted and that might, after issuance of a conditional writ, prove successful in state court, but that might not be thought by a federal habeas court to have a "reasonable probability of affecting the outcome." In other words, appellate counsel might, in some instances, be found to have performed below the level of reasonable competence, even though the habeas court is not persuaded that the·omitted issue is a likely winner. In a case like the pending one, where the omitted claim is based on state law, the test should be simply whether the claim had sufficient merit, in view of the other available issues, that reasonably competent counsel would pursue it; the habeas court's prediction that the state law claim would probably be meritorious in state court is wholly unnecessary and, indeed, inappropriate for a federal court.

4. *Omission of state law issue rejected by state intermediate court.* That brings me to the majority's fourth and most questionable step, the ruling that Claudio's state court appellate counsel was constitutionally deficient in this case. The majority rules that appellate counsel's failure to carry to the Court of Appeals the state law claim rejected by the Appellate Division was constitutionally deficient. Whatever standard is used to assess the competency of state court appellate counsel, I cannot agree that counsel was constitutionally deficient in omitting that issue from his second-level appeal.

The majority undertakes a detailed analysis of state law and finds a "reasonable probability" that Claudio's state law claim would have succeeded in·the Court of Appeals. In my view, that analysis extends the constitutional right to counsel beyond the authority of a federal habeas court in a case such as this where an intermediate state appellate court has ruled that the state law claim is without merit.

The Appellate Division faced what it regarded as an issue of first impression under New York law. *See People v. Claudio*, 85 A.D.2d at 257, 447 N.Y.S.2d at 980. Recognizing that under New York law the right to counsel may attach at an earlier time than under federal law and that the state right to counsel had attached at the

time of Claudio's confession, the Appellate Division had to decide whether the state law right to counsel includes not only the presence of counsel but also the competent assistance of counsel prior to the initiation of formal judicial proceedings. The Appellate Division ruled that state law does not provide such protection. It reasoned that the right to the competent assistance of counsel could be enforced by courts where counsel acted in the course of judicial proceedings, but that state law imposed no obligation on police or prosecutors to monitor the quality of legal assistance rendered by defense counsel.[7] *Id.* at 257–61, 447 N.Y.S.2d at 980–82.

I do not know whether the Appellate Division's ruling is a correct interpretation of New York law. A subsequent decision of the New York Court of Appeals, *People v. Beam,* 57 N.Y.2d 241, 455 N.Y.S.2d 575, 441 N.E.2d 1093 (1982), decided seven months later, lends arguable support to the Appellate Division's ruling, but is arguably distinguishable, as the majority in this case contends, at 804. But however New York law will ultimately be explicated on Claudio's state law claim,[8] the undeniable fact is that an intermediate appellate court has ruled that the claim lacks merit. That ruling is not merely a precedent from some other litigation of arguable relevance to Claudio's case, to which a federal court

would owe considerable deference if the correctness of the ruling were directly in issue. *See West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 237–38, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940) (decision of state intermediate appellate court on state law issue "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"). The ruling was rendered *in* Claudio's case.[9] In my view, an appellate lawyer can never be found to have denied his client the effective assistance of counsel guaranteed by the federal Constitution for electing to omit on appeal to a state's highest court a state law claim that has been rejected on the merits by a state's intermediate appellate court, at least in the absence of some contradictory ruling from the state's highest court prior to the time the second-stage appeal is filed.

In asserting that virtually *per se* position, I must reckon with the argument that since appellate counsel can be found to be constitutionally ineffective for omitting on a first-stage appeal a state law issue rejected on the merits by a trial court, the same test of competence should apply when counsel omits from a second-stage appeal an issue rejected on the merits by an intermediate appellate court. The superficial

7. The Appellate Division expressed no opinion on whether a state law right to effective assistance of counsel would be denied if at a pre-accusation stage, interrogators were aware that a suspect was confessing on the basis of incompetent legal advice. *People v. Claudio,* 85 A.D.2d at 261 n. 7, 447 N.Y.S.2d at 982 n. 7.

8. The two judges of the Court of Appeals who dissented in *Claudio* are fairly to be understood as upholding Claudio's state law claim, even though all members of the Court of Appeals adjudicated only his federal law claim since the state law claim had not been argued. The dissenting judges expressed the view that regardless of when the federal right to counsel attaches, guaranteeing a defendant the right to the presence of counsel, the defendant has a right to the effective assistance of counsel "once counsel has been engaged." *People v. Claudio,* 59 N.Y.2d 556, 565, 466 N.Y.S.2d 271, 276, 453 N.E.2d 500, 505 (1983) (Jones, J., with whom Meyer, J., joins, dissenting). Though the Supreme Court has subsequently ruled that the federal right to counsel does not attach prior to the initiation of adversary proceedings simply

because an attorney-client relationship has been formed, *see Moran v. Burbine,* 475 U.S. 412, 430–31, 106 S.Ct. 1135, 1145–46, 89 L.Ed.2d 410 (1986), thus barring a claim of ineffective assistance of counsel, *see Coleman v. Thompson, supra,* the dissenting judges in *Claudio* would presumably have applied their view concerning a right to effective assistance of counsel whenever engaged to the state law right to counsel.

9. In *West,* the Supreme Court ruled that the law "announced and applied [by the state intermediate appellate court] is the law of the state applicable in the same case and to the same parties in the federal court." *Id.,* 311 U.S. at 238, 61 S.Ct. at 184. The full rigor of that ruling is not precisely applicable to a case such as this where the question is whether appellate counsel was constitutionally deficient in failing to seek reversal of the intermediate court's decision, but the Court's view nevertheless reenforces my belief that counsel's omission was not incompetence.

symmetry of this argument ignores the nature of the appellate function. Appellate courts sit to examine rulings of trial courts and correct what they perceive to be errors. Trial courts, of course, are equally bound to apply the law, but they function in a different environment. Their trial responsibilities oblige them to rule rapidly. Appellate courts enjoy the luxury of time for more reflective decisionmaking. No doubt some trial court rulings represent the result of prolonged and painstaking examination and some appellate court rulings are hasty and ill-considered. But the institutional differences between the levels of court persuade me that in giving content to the federal guarantee of effective assistance of appellate counsel, a federal court may properly consider counsel's failure to appeal a trial court's rejection of a state law claim but may not consider the failure to pursue a second-stage appeal of a state law claim rejected on its merits by an intermediate appellate court.

A proper regard for federalism interests reenforces my conclusion. It is already a significant broadening of the Due Process Clause, with a corresponding expansion of federal habeas jurisdiction, to include state law issues in determining whether counsel's choice of claims and defenses constituted effective assistance. That step is a reasonable accommodation between the Due Process value of assuring defendants effective participation in the adversary process and the federalism interests in limiting federal court intrusion into matters of state criminal law. But once an intermediate state appellate court has rejected a state law claim on the merits, the role of a federal habeas court would be unduly broadened if it undertook to determine whether counsel was incompetent in not challenging that decision before the state's highest court. Federal habeas corpus courts have no authority to correct what they perceive to be state court errors of state law. They should be equally barred from undertaking to predict the likelihood that a state's intermediate court will be reversed by a state's highest court on an issue of state law, yet that is precisely the assessment the majority makes in this case

in determining that Claudio's counsel was incompetent in not pursuing his state law claim despite the rejection by the Appellate Division.

5. *The remedy.* Having determined that Claudio's state court appellate counsel was constitutionally deficient for not pursuing in the Court of Appeals the state law ineffective assistance of trial counsel claim, the majority directs the issuance of a writ of habeas corpus, unless the State affords Claudio an opportunity to "present" his state law claim to the New York Court of Appeals. Normally, where a state prisoner persuades a habeas court that he has been denied a federally protected right, he is entitled to a writ conditioned upon a new trial. In this case, though I find no basis to grant habeas relief, I agree with the majority that if appellate counsel's performance was constitutionally deficient, the proper remedy is to condition the writ only on the State's obligation to afford Claudio an opportunity to return to the New York Court of Appeals. *See Evitts v. Lucey,* 469 U.S. at 390, 105 S.Ct. at 832 (writ conditioned on either retrial or reinstatement of appeal); *Laffosse v. Walters,* 585 F.Supp. at 1214 (writ conditioned on granting of new appeal). That return, however, is only for the opportunity to "present" his state law claim, as the majority is careful to state. The reason for that limited opportunity arises from the unusual procedural circumstances of Claudio's case.

Initially, the prosecution took an interlocutory appeal to the Appellate Division from the trial court's ruling suppressing the confession on federal constitutional grounds. When that ruling was reversed, Claudio's counsel appealed the reversal to the New York Court of Appeals. That Court ruled that Claudio's state law challenge to his confession would not be considered because appellate counsel had not asserted the state law claim in either the trial court, the Appellate Division, or the Court of Appeals. *People v. Claudio,* 59 N.Y.2d at 560 n. 1, 466 N.Y.S.2d at 272 n. 1, 453 N.E.2d at 501 n. 1. On the pending appeal, the State argues that the Court of Appeals was procedurally barred from considering the state

law claim because, wholly apart from appellate counsel's omission of the issue, an appellate court, under state law, can consider on an interlocutory appeal only the grounds on which a trial court's ruling rested. *See People v. Karp,* 76 N.Y.2d 1006, 1009, 565 N.Y.S.2d 751, 751, 566 N.E.2d 1156, 1156 (1990); *People v. Cade,* 74 N.Y.2d 410, 418, 548 N.Y.S.2d 137, 141, 547 N.E.2d 339, 343 (1989). The majority contends that this procedural bar is inapplicable because the Appellate Division decided the merits of the state law claim and the State briefed the issue in the Court of Appeals.

Whether or not the state law claim was procedurally barred on the interlocutory appeal is a matter of state law. However that procedural issue would have been resolved had appellate counsel pursued the state law claim in the Court of Appeals on the pre-trial appeal, the outcome will not necessarily be the same on the post-trial appeal now afforded by virtue of the conditional writ. *See People v. Goodfriend,* 64 N.Y.2d 695, 697, 485 N.Y.S.2d 519, 521, 474 N.E.2d 1187, 1188 (1984). Because we cannot be certain whether the Court of Appeals can now reach the merits of Claudio's state law claim, I agree that, if, contrary to my view, appellate counsel was constitutionally deficient in not arguing the state law claim to the Court of Appeals, the proper remedy is to afford Claudio only the opportunity to "present" the claim, leaving it to the Court of Appeals to decide whether it has authority to adjudicate that claim.

To the extent indicated in the foregoing, I respectfully dissent.