**Angel SELLAN, Petitioner,**

v.

**Robert KUHLMAN, Superintendent of Sullivan Correctional Facility, and Dennis Vacco, New York State Attorney General, Respondents.**

Civ.A.No. 97–CV1882 (DGT).

United States District Court, E.D. New York.

Sept. 14, 1999.

Loren I. Glassman, New York City, for Petitioner.

Richard A. Brown, District Attorney, Queens County, Kew Gardens, NY, for Respondents.

### MEMORANDUM AND ORDER

TRAGER, District Judge.

Following a jury trial in New York Supreme Court, County of Queens, petitioner was convicted of a number of crimes arising out of the fatal shooting of one man and the wounding of two others on the boardwalk at Rockaway Beach in Queens. This petition involves only the two most serious crimes of which petitioner was convicted—murder in the second degree, so-called "depraved mind murder," *see* N.Y. Penal Law § 125.25(2), and manslaughter in the first degree, a lesser included count of intentional murder. *See* N.Y. Penal Law § 125.20. Defendant was sentenced to a term of twenty-five years to life in prison for his second degree murder conviction, a concurrent term of eight and one-third to twenty-five years for the first degree manslaughter conviction, and additional shorter terms, running concurrently, for the remaining convictions.

On October 3, 1988, the Appellate Division, Second Department, unanimously affirmed petitioner's judgment of conviction. *See People v. Sellan,* 143 A.D.2d 690, 533 N.Y.S.2d 109 (2d Dept.1988). On December 20, 1988, the Court of Appeals denied leave to appeal. *See People v. Sellan,* 73 N.Y.2d 860, 537 N.Y.S.2d 506, 534 N.E.2d 344 (1988). Nine months later, on August 22, 1989, petitioner, pro se, filed an application for a writ of error *coram nobis* with the Appellate Division, Second Department.

In that *coram nobis* application, petitioner argued that his appellate counsel was ineffective for failing to cite the then recent New York Court of Appeals decision *People v. Gallagher,* 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987). Petitioner argued, on the basis of that precedent, that the trial court's refusal to charge intentional and depraved mind murder in the alternative mandated a reversal of petitioner's conviction. The Second Department summarily denied petitioner's application. *See People v. Sellan,* No. 9152 (2d Dept. Jan. 25, 1990). On March 16, 1990, the New York Court of Appeals again denied leave to appeal. *See People v. Sellan,* 75 N.Y.2d 924, 555 N.Y.S.2d 43, 554 N.E.2d 80 (1990).

On April 16, 1990, petitioner, represented by the same counsel that represented him at trial, filed with the Appellate Division, Second Department, a motion for reargument of his direct appeal or reconsideration of his application for a writ of error *coram nobis.* The Second Department again summarily denied petitioner's motion on July 20, 1990. *See People v. Sellan,* No. 3778 (2d Dept. July 20, 1990). On October 5, 1990, the New York Court of Appeals dismissed petitioner's application because the Second Department's order was not appealable under New York Criminal Procedure law. *See People v. Sellan,* 76 N.Y.2d 944, 563 N.Y.S.2d 73, 564 N.E.2d 683 (1990).

Petitioner, now acting again pro se, next filed in the Supreme Court, County of Queens, a motion to vacate his judgment of conviction pursuant to N.Y. Criminal Procedure Law § 440.10. The Supreme Court, on March 26, 1993, issued a decision denying petitioner's motion as procedurally barred and, in the alternative, finding his claims to be meritless. On October 4, 1993, the Supreme Court granted petitioner's motion to reargue but, upon reargument, denied his motion to vacate his judgment of conviction.

Petitioner filed this application for a writ of habeas corpus on April 15, 1997, claiming that appellate counsel's failure on the direct appeal of his New York State conviction to raise an issue of state law violated petitioner's right to counsel as applied to the States under the Fourteenth Amendment of the United States Constitution. Specifically, petitioner contests appellate counsel's failure to argue that, under New York law, the jury could not properly have found petitioner guilty beyond a reasonable doubt of both depraved mind murder and intentional manslaughter because "the two crimes have inconsistent and repugnant elements." Pet. Mem. of Law, p.2. Petitioner's argument was that the manslaughter charge required the jury to find that defendant intended to cause serious physical injury to his intended victim, while the murder charge depended upon a finding that he acted with an extreme state of recklessness in causing the death of that same victim. The alleged error was properly preserved for appeal by trial counsel, but appellate counsel chose not to raise the issue on petitioner's direct appeal. Petitioner contends that had this issue been raised on appeal, New York courts would "almost certainly" have ordered a new trial on the homicide charges. *Id.* The District Attorney argues that appellate counsel's failure to raise the state law claim did not render counsel's assistance inadequate.

## Discussion

### (1)

■ At issue on this application for a writ of habeas corpus is the scope of the

federal right to adequate representation by counsel. That a right to adequate representation by counsel exists has been clearly established by the Supreme Court of the United States. *See McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel.") (citations omitted). The federal right to adequate representation by counsel encompasses appeals of a state criminal conviction where a defendant has an appeal as of right under state law. *See Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985) (right to effective assistance of appellate counsel on direct appeal as of right is a federally guaranteed and protected right; failure that caused petitioner to waive right to direct appeal on the merits was akin to situation in which a petitioner has "no counsel at all").

These principles having been established, two questions must be answered in the affirmative before a writ of habeas corpus may issue in this case: whether appellate counsel's performance here was prejudicially inadequate, and if so, whether federal habeas law recognizes that appellate counsel's failure to raise issues of state law on direct appeal of a state conviction may provide a basis for granting a writ of habeas corpus.

### (2)

■ On the issue of the adequacy of petitioner's appellate counsel, this case presents a close question. The Appellate Division, Second Department, concluded on January 25, 1990, that petitioner's representation was adequate under State law. *See People v. Sellan*, No. 9152 (2d Dept. Jan. 25, 1990) (denying motion for writ of error *coram nobis* "on ground of ineffective assistance of appellate counsel"). In order to prevail in a habeas proceeding on a claim of ineffective assistance of counsel, a petitioner must show both that his counsel acted "outside the wide range of professionally competent assistance" and that

the inadequacies in his counsel's performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 690, 691–92, 104 S.Ct. 2052, 2065, 2066–67, 80 L.Ed.2d 674 (1984). In other words, a petitioner must show that absent the inadequate performance of counsel, the ultimate result of the criminal proceeding would have been different.

■ Prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court reviewing a claim of ineffective assistance of counsel was required to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*" *Jameson v. Coughlin*, 22 F.3d 427 (2d Cir.1994) (emphasis added) (quotations and citations omitted). Under the new standard enunciated in AEDPA, a habeas court, when reviewing the decision of a state appellate court denying a claim of ineffective assistance of counsel, must deny an application for a writ of habeas corpus unless the adjudication of the state law claim "involved an *unreasonable* application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d) (emphasis added). For the moment, the issue of whether the right claimed here has been clearly established by Supreme Court precedent is put aside.

■ The present claim of ineffective assistance of counsel is premised on appellate counsel's failure to raise an issue of state law on direct appeal of petitioner's state conviction. Under the *Strickland* test, had appellate counsel done so, petitioner would have stood a reasonable probability of satisfying the second prong of that test—i.e., that his appellate counsel's performance prejudiced his appeal. Indeed, one year after the Second Department denied petitioner's application for a writ of error *coram nobis*, the New York Court of Appeals held that a defendant could not be found guilty of both intention-

al manslaughter and depraved mind murder, the same two offenses at issue here. *See People v. Robinson,* 75 N.Y.2d 879, 554 N.Y.S.2d 473, 553 N.E.2d 1021 (1990). In *Robinson,* the Court of Appeals adopted the reasoning of the Fourth Department, which held that convictions for intentional manslaughter and depraved mind murder were inconsistent verdicts within the meaning of New York Criminal Procedure Law § 300.30(5) and *People v. Gallagher. See id.,. aff'g People v. Robinson,* 145 A.D.2d 184, 186, 538 N.Y.S.2d 122, 123 (4th Dept.1989) (concluding that a defendant's acts cannot simultaneously be intentional and reckless).[1] *Id.* Therefore, had petitioner's appellate counsel raised the inconsistent charge issue on direct appeal of his state conviction, there was a good prospect that when the case reached the Court of Appeals, it would have reversed his murder and manslaughter convictions and remanded the matter for a new trial, as it later did in *Robinson.* The question remains whether the assistance provided by appellate counsel fell beneath the minimum standard of adequacy required by the Constitution as set forth in the first prong on the *Strickland* test.

The District Attorney argues that appellate counsel's decision not to raise the issue was reasonable. Shortly after petitioner filed an application for a writ of error *coram nobis* in August 1989, in which he alleged the ineffective assistance of his appellate counsel, his appellate counsel filed an affidavit stating her reasons for not raising the issue of State law on direct appeal of petitioner's State conviction.[2] Appellate counsel noted that she had considered and rejected the argument that petitioner had advanced, based on her assessment of the then applicable New York law. *See* Mem. of Law in Opp. to Pet. for

Writ of Habeas Corpus, Exh.1 ¶ 1 (Salomon Aff.).

The legal picture then facing appellate counsel was a mixed one. Nine months before petitioner's appellate brief was filed, the Court of Appeals had held that a defendant could not be convicted of both intentional murder and reckless manslaughter for the same act "because guilt of one necessarily negates guilt of the other." *People v. Gallagher,* 69 N.Y.S.2d 525, 529–30, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987). In that case, the Court of Appeals noted that "[b]y no rational theory could the jury have found defendant guilty of both crimes" and explained that "[b]ecause the jury found defendant guilty of both intentional and reckless homicide, it is impossible to determine what if anything the jury decided on the issue of defendant's mental state at the time of the offense." *Id.* at 530, 516 N.Y.S.2d 174, 508 N.E.2d 909. The Court then ordered that a new trial take place. *Id.* This is the case upon which petitioner relied in his petition for a writ of error *coram nobis.*

Appellate counsel, instead, chose to rely on the subsequent Second Department decision in *People v. Moloi,* 135 A.D.2d 576, 521 N.Y.S.2d 794 (2d Dept.1987), to conclude that notwithstanding the Court of Appeals' holding in *Gallagher,* a conviction on a count of reckless murder was not necessarily inconsistent with a conviction based on intentional manslaughter. In *Moloi,* the defendant had been convicted of two counts of intentional assault in the first degree—one based on the reckless creation of a risk of death and the other premised on the intentional infliction of serious physical injury. The Second Department held that the two counts of assault in the first degree were not " 'inconsistent counts,' since a conviction of one

---

**1.** At the time that appellate counsel made the decision not to raise the issue of state law, *Robinson* had not yet been decided by the Fourth Department.

**2.** This affidavit was filed after the Fourth Department's 4–1 *Robinson* decision, but before

the Court of Appeals' decision in that case. After the Court of Appeals affirmance of the Fourth Department's decision, petitioner's appellate counsel reversed her earlier position and argued that her representation of petitioner had been inadequate.

would not necessarily negate the defendant's guilt of the other." *Id.* at 577, 521 N.Y.S.2d at 796 (citing N.Y.Crim. Proc. L. § 300.30[5]; *Gallagher*, 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987)). The Second Department explained that the fact "a defendant may have committed an act with the intent to seriously injure another person does not rule out the possibility that he may have also unintentionally (and recklessly) created a risk of such person's death." *Id.* (citation omitted). Appellate counsel concluded that the logic underlying *Moloi* controlled in petitioner's case as well and, accordingly, opted not to appeal petitioner's conviction on the basis of inconsistent verdicts. *See* Mem. of Law in Opp. to Pet. for Writ of Habeas Corpus, Exh.1 ¶ 1 (Salomon Aff.).

Despite the logic in appellate counsel's position, it would seem that she should have raised the issue on petitioner's direct appeal of his state conviction. However rational appellate counsel's analysis was, the decision not to raise the issue of state law in the Appellate Division on the way to raising it in the Court of Appeals can be fairly characterized as unjustifiable. First, the two issues appellate counsel chose to raise on direct appeal of petitioner's state conviction seem to have no greater likelihood of success than the issue counsel chose not to raise. The first issue concerned the admission into evidence of petitioner's membership in a gang. The Second Department found the admission of this evidence to have been erroneous, but harmless. *See People v. Sellan*, 143 A.D.2d 690, 533 N.Y.S.2d 109 (2d Dept. 1988). The Second Department also rejected appellate counsel's argument that the length of petitioner's sentence was excessive. This argument, in light of the crimes involved, appears to have had little merit. Thus, this was not a situation where there were other more meritorious arguments to be raised, the strength of which would have been diluted by raising an additional claim.

Moreover, a knowledgeable defense lawyer could not ignore the reputation of the New York Court of Appeals at that time as being one of the most liberal, pro-defendant courts in the country. *Cf.* Vincent M. BonVentre, *Court of Appeals—State Constitutionalism Law Review, 1990*, 12 Pace L.Rev. 1 (1992); Vincent M. BonVentre, *Court of Appeals—State Constitutionalism Law Review, 1991*, 14 Pace L.Rev. 353 (1994); Vincent M. BonVentre, *New York's Chief Judge Kaye: Her Separate Opinions Bode Well For Renewed State Constitutionalism at the Court of Appeals*, 67 Temp. L.Rev. 1163 (1994); Vincent M. BonVentre & Luke Bierman, *State Constitutional Jurisprudence: Decision Making at the New York Court of Appeals*, 13 Touro L.Rev. 3 (1996); Peter Reinharz, *The Court Criminals Love*, 6 City J. 38 (1996); Vincent M. BonVentre & Judi A. DeMarco, *Court of Appeals Bashing: A Reality Check*, 69 Aug. N.Y. St. B.J. 10 (1997).

In sum, under the old standard of habeas review, it may fairly be concluded that petitioner's appellate counsel's performance was inadequate. *See Jameson v. Coughlin*, 22 F.3d 427 (2d Cir.1994); 28 U.S.C. § 2254(d) (1995). Whether the Second Department's denial of petitioner's application for a writ of error *coram nobis*, based on appellate counsel's failure to raise the issue of inconsistent verdicts, was "unreasonable" under AEDPA's new standard of review presents a much closer question.

In the view of Chief Judge Posner of the Seventh Circuit, § 2254(d)(1) of AEDPA "commands deference to the state court's judgment by using the word 'unreasonable,' which is stronger than 'erroneous' and maybe stronger than 'clearly erroneous.'" *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir.1997) (citation omitted). The touchstone for a reasonable determination is "whether the determination is at least minimally consistent with the facts and circumstances of the case." *Id.* at 335. Thus, the fact that a habeas court might

disagree with a state court determination "would not carry the day" for a petitioner. *Id.* at 334.

Under an alternative view described, but not adopted, by Judge Posner, however, "reasonableness" is measured by "the quality of the reasoning process articulated by the state court in arriving at the determination." *Hennon,* 109 F.3d at 334 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983); *Madison Gas & Elec. Co. v. U.S. E.P.A.,* 25 F.3d 526, 529 (7th Cir.1994); *Bastanipour v. INS,* 980 F.2d 1129, 1131 (7th Cir.1992)). As in the case of a federal judicial review of an agency decision, in this approach "[federal] courts insist not only that the outcome be reasonable in relation to the evidence but that the [state court] articulate a rational path connecting the law and the evidence to the outcome." *Hennon,* 109 F.3d at 334–35 (citations omitted).

Under a third view embraced by the Fourth Circuit when interpreting § 2254(d)(1), "habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Williams v. Taylor,* 163 F.3d 860 (1998), *cert. granted,* —— U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516 (1999); *see also Drinkard v. Johnson,* 97 F.3d 751, 769 (5th Cir.1996) (applying reasonable jurist analysis).

The first approach appears to be the best one. The second one "would place the federal court in just the kind of tutelary relation to the state courts that the recent amendments are designed to end." *Hennon,* 109 F.3d at 335. Moreover, "[i]t would be less appropriate than in the parallel area of administrative review, where the court can remand the case to the administrative agency for a better articulation of its grounds." *Id.* (citations omitted). Finally, under the second approach, upon habeas review, the federal court must order a new trial even "though the defendant may have been the victim not of any constitutional error but merely of a failure of judicial articulateness." *Id.*

The third approach, adopted by at least two circuits, is also problematic. This approach employs somewhat circular reasoning that seems disrespectful to state court judges. Reasonableness is defined by what "reasonable jurists" think and, thus, is not of much assistance in determining whether a state court's application of federal law was reasonable. In addition, it puts federal court judges in the position of judging which state court judges are unreasonable. More importantly, it places the focus of the inquiry on the reasonableness of hypothetical jurists rather than on the reasonableness of the actual determination that was made. *See* Evan Tsen Lee, *Section 2254(d) of the New Habeas Statute: An (Opinionated) User's Manual,* 51 Vand. L.Rev. 103, 115–17 (1998).

In the instant case, under the first approach the Second Department's decision denying the application for a writ of error *coram nobis* would appear to be reasonable in light of the soundness of appellate counsel's analysis of the then-existing precedent. The Second Department's conclusion was also consistent with its holding in *Moloi,* a case which, as discussed above, stands on firmer ground than *Robinson. Compare People v. Moloi,* 135 A.D.2d 576, 521 N.Y.S.2d 794 (2d Dept.1987), *with People v. Robinson,* 145 A.D.2d 184, 538 N.Y.S.2d 122, 123 (4th Dept.1989). Given the reasonableness of appellate counsel's analysis and the Second Department precedent, the Second Department's denial of petitioner's ineffective assistance of counsel claim was reasonable as it was "at least minimally consistent with the facts and circumstances of the case." *Hennon,* 109 F.3d at 335. The Second Department's decision would also appear to be reasonable under the third approach, since so-called "reasonable jurists" could not agree that the Second Department's decision was unreasonable.

Under the second approach, however, it would appear that the Second Department's decision was unreasonable. The Second Department's decision and order denying petitioner's motion for a writ of error *coram nobis* gives no insight into "the quality of the reasoning process" employed by that court. *Id.* at 334. Instead, the decision and order summarily denies petitioner relief without "articulat[ing] a rational path connecting the law and the evidence to the outcome." *Id.* at 335.

Notwithstanding the fact that contrary results are reached depending on which of the competing standards of reasonableness is applied, the issue of which standard governs need not here be resolved here.[3] Even assuming that the Second Department's denial of petitioner's application for a writ of error *coram nobis* was unreasonable under the AEDPA, the question remains whether the failure to raise this claim is a violation of "clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### (3)

A state court's unreasonable application of federal law, alone, does not provide a habeas court with a sufficient basis upon which to grant a writ of habeas corpus under AEDPA. AEDPA provides that, in addition to showing that a state court's application of federal law was unreasonable, a petitioner must establish that the federal law unreasonably applied had been "clearly established ... as determined by the Supreme Court of the United States."[4] 28 U.S.C. § 2254(d). Based on a review of the applicable law, I conclude that the failure by counsel to raise a meritorious issue of state law on appeal does not give rise to a violation of federal law within the

meaning of 28 U.S.C. § 2254(d)(1). As such, habeas court review of such claims appears to be precluded under 28 U.S.C. § 2254(d).

Under the broader rubric of federalism, federal courts lack jurisdiction over claims that revolve solely around a state law issue. State courts can be expected to take the necessary steps to vindicate their own law; but should they not, the loss is to the effectiveness of their own law, and it is that law, not federal law, that suffers as a result. Moreover, it would be anomalous, to say the least, to grant habeas relief and a new trial to a defendant whose counsel failed to object to a ruling where, if the same claim were asserted at a trial in federal court, the relief would be denied because federal law is to the contrary. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (counsel's inadequacy in state court held to raise a federal claim, although the issue involved raised a Fourth Amendment claim).

In *Claudio v. Scully*, 982 F.2d 798 (2d Cir.1992), the Second Circuit held that habeas review of Sixth Amendment ineffective assistance of counsel claims extends to the failure to assert state law claims. In *Claudio*, retained counsel advised the defendant to surrender to the police without first explaining the seriousness of the charges against him and then encouraged the defendant to make a statement without which the defendant could not have been charged, much less convicted. The defendant was subsequently convicted of murder in the second degree, among other crimes. On appeal, the defendant argued that his Sixth Amendment right to effective assistance of counsel had been violated by retained counsel's conduct. The Second Department rejected this argument

---

3. The Supreme Court has granted certiorari on this question, and by next Spring will no doubt resolve the issue of the proper meaning of "unreasonable" under 28 U.S.C. § 2254(d). *See Williams v. Taylor,* —— U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516 (1999).

4. Under § 2254(d), petitioner's application for a writ of habeas corpus must be denied unless the adjudication of his State law claim "involved an unreasonable application of [] clearly established Federal law, *as determined by the Supreme Court of the United States.*" 28 U.S.C. § 2254(d)(1) (emphasis added).

after determining that the defendant's right to counsel under the Sixth Amendment of the United States Constitution had not yet attached. The Second Department also addressed, sua sponte, the question of whether the defendant's right to counsel had been violated under art. I, § 6 of the New York Constitution. The Court determined that the right to counsel under state law had attached, but that it had not been violated "since the State constitutional right to counsel before the initiation of formal proceedings did not include a right to effective counsel," *id.* at 800, and affirmed the defendant's judgment of conviction.

On appeal to the New York Court of Appeals, the defendant's appellate counsel did not raise the New York right to counsel claim, and the Court affirmed the Second Department's decision that the defendant's Sixth Amendment right to counsel had not attached prior to his confession. On his application for a writ of habeas corpus, the defendant contended that his appellate counsel's failure to include his New York right to counsel claim in his direct appeal to the New York Court of Appeals the New York right to counsel claim rendered appellate counsel's performance inadequate under the United States Constitution.

The Second Circuit agreed, over a strong dissent by Judge Newman. It held that counsel was ineffective under the Sixth Amendment of the United States Constitution for failing to raise an issue of state law upon the direct appeal of a state conviction. *See id.* Judge Newman argued that when the Appellate Division decides an issue of first impression under New York law, regardless of how New York law will ultimately be explicated on the issue, the judgment of the Appellate Division is not to be second-guessed. *See id.* at 810–11. In his dissent, Judge Newman asserted that it is not within the

jurisdictional scope of a federal habeas court to try to predict whether the New York Court of Appeals will ultimately decide the issue differently—"[f]ederal habeas corpus courts have no authority to correct what they perceive to be state court errors of state law." *Id.* at 812. Accordingly, in his view—a view I share—the failure to raise an issue of state law on direct appeal of a state conviction could not give rise to a claim of ineffective assistance of counsel under either the Sixth or Fourteenth Amendments of the United States Constitution.[5]

The majority's decision in *Claudio* appears to require a district court to grant habeas relief where appellate counsel fails to raise an open issue of state law on the direct appeal of a state conviction. That decision, however, is at odds with AEDPA's requirement that no habeas relief be granted absent the existence of clearly established Supreme Court precedent. The right to counsel on a criminal appeal has not been explicitly extended by the Supreme Court to apply to the failure of appellate counsel to raise an issue of state law on direct appeal of a state conviction. *See Claudio v. Scully*, 982 F.2d 798, 807 (2d Cir.1992) (Newman, J., dissenting). Thus, the next issue presented on this application is whether a district court considering a petition for habeas relief under 28 U.S.C. § 2254 is constrained to follow "federal law" only as determined by the Supreme Court of the United States or whether a district court is bound, in the absence of a Supreme Court rule, by the precedent of its own circuit. *See* 28 U.S.C. 2254(d).

Turning to the language of § 2254(d)(1), numerous courts and commentators have concluded that "the new § 2254(d)(1) ... appears to require that the [lower] federal courts are restricted to the case law of the Supreme Court of the United States in reviewing a petitioner's habeas claim and

---

5. Judge Newman did not resolve the question whether his view would be different if the

failure involved a settled question of state law.

may no longer apply their own precedent."
*Nevers v. Killinger,* 990 F.Supp. 844, 850
(E.D.Mich.1997), *aff'd,* 169 F.3d 352 (6th
Cir.1999) (citing *Lindh v. Murphy,* 96 F.3d
856, 870 (7th Cir.1996), *rev'd on other
grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138
L.Ed.2d 481 (1997) (additional citations
omitted)); *see also Blankenship v. John-
son,* 106 F.3d 1202, 1205 (5th Cir.), *opinion
withdrawn and superseded on reh'g,* 118
F.3d 312 (1997); *Green v. French,* 143
F.3d 865, 869–73 (4th Cir.1998), *cert. de-
nied,* —— U.S. ——, 119 S.Ct. 844, 142
L.Ed.2d 698 (1999); Liebman & Ryan,
*Some Effectual Power: The Quantity and
Quality of Decisionmaking Required of
Article III Courts,* 98 Colum. L.Rev. 696,
867 (1998) ("only Supreme Court prece-
dent may clearly establish federal law.").
*But see* Evan Tsen Lee, *Section 2254(d) of
the New Habeas Statute: An (Opinionat-
ed) User's Manual,* 51 Vand. L.Rev. 103,
131–36 (1998) (opining that district courts
are still required to follow circuit court
precedent even where no clearly estab-
lished Supreme Court rule exists).[6]

It would seem from the language of the
statute and the apparent intent of Con-
gress to "stop federal habeas courts from
granting relief based on rules created sole-
ly by the Courts of Appeals," Evan Tsen
Lee, *Section 2254(d) of the New Habeas
Statute: An (Opinionated) User's Manu-
al,* 51 Vand. L.Rev. 103, 131 (1998), that
district courts are to follow Supreme Court
law, not circuit court law interpreting Su-
preme Court precedent. In the absence of
a definitive, contrary Supreme Court rul-
ing on this issue, it would appear that
district courts must look directly to the law
as established by the Supreme Court. Ac-
cordingly, *Claudio v. Scully* would not ap-
pear to be controlling here and, therefore,
there has been no violation of "federal law"
within the meaning of § 2254(d)(1).

Petitioner has failed to meet the re-
quirements of 28 U.S.C. § 2254(d)(1) with-
in the plain meaning of the statute and,
therefore, no writ should issue.

**(4)**

In any case, the apparent conflict be-
tween § 2254(d)(1) of AEDPA and the
Second Circuit's decision in *Claudio* need
not be resolved. First, given that *Claudio*
was decided before the enactment of AED-
PA, it is not at all clear that the Second
Circuit, if deciding the issue today, would
still conclude that the failure to raise an
issue of state law on direct appeal of a
state law conviction was a violation of "fed-
eral law" as determined by the *Supreme
Court of the United States* as required by
28 U.S.C. § 2254(d)(1). At the time that
*Claudio* was decided in 1992, there was no
requirement that habeas relief be granted
only where the "federal law" alleged to
have been violated by state courts had
been determined by the Supreme Court of
the United States. The rule recognized by
the Second Circuit in *Claudio* does not
appear to be based on its interpretation of
Supreme Court precedent. *See Claudio,*
982 F.2d at 803 n. 5. It is less than clear
that the Second Circuit would have held as
it did in *Claudio* had AEDPA, or a similar
rule, been in effect at that time, especially
given AEDPA's clear proscription against
recognizing federal rights not yet deter-
mined by the Supreme Court of the United
States. Thus, the precedential value of
*Claudio,* on the issue for which it is cited
by petitioner, is questionable.

More importantly, even if one accepts
that Second Circuit precedent could satisfy
the "federal law" requirement within the
meaning of AEDPA, the law that petition-
er seeks to rely on here had not even been
established until *after* he had exhausted all
of his direct appeals and his application for
a writ of error *coram nobis* had been

---

**6.** This comment as well as some judges have
opined that such a reading of the statute
would be unconstitutional. *See, e.g., Lindh v.
Murphy,* 96 F.3d 856, 885–89 (7th Cir.1996)
(Ripple, J. dissenting). This seems to be a
rather dubious proposition, since there is no
constitutional requirement that both district
courts and courts of appeals must have juris-
diction in habeas cases.

decided. Under § 2254(d)(1), a district court may grant a writ of habeas corpus only if "clearly established" federal law has been violated at the relevant stage of the adjudication of a state law claim. *See* 28 U.S.C. § 2254(d)(1); *see also Neelley v. Nagle*, 138 F.3d 917, 922 (11th Cir.1998) (first step in resolving habeas claim is determining what was " 'clearly established' " law "*at relevant time* ") (emphasis added); Liebman & Ryan, *Some Effectual Power: The Quantity and Quality of Decisionmaking Required of Article III Courts*, 98 Colum. L.Rev. 696, 867 (1998) ("law must be clearly established by the date of the state decision").

Neither the Supreme Court nor this circuit appears to have determined at what point during the adjudication of a state law claim—whether by the close of trial or after the conclusion of all direct appeals—a federal law must be "clearly established." Here, however, it makes no difference which measuring point is used—there was no "clearly established" federal rule in place either by the end of trial or the conclusion of petitioner's direct appeals. *Claudio*, the case on which petitioner relies, was not decided until 1992, four years after the New York Court of Appeals denied petitioner leave to appeal the Second Department's affirmance of his conviction, and two years after the Court of Appeals denied him leave to appeal the Second Department's denial of his application for a writ of error *coram nobis*. Thus, at the time that the alleged errors were made by state courts, there was no "clearly established" federal rule that counsel could be found ineffective under the United States Constitution for failing to raise an issue of state law on direct appeal.

Accordingly, petitioner's application for a writ of habeas corpus is denied.

### Conclusion

A certificate of appealability will not issue since petitioner has not made a substantial showing of the denial of a constitutional right. The Clerk of the Court is directed to enter judgment and close the case.

SO ORDERED.