Konstantin RUDENKO, Petitioner,

v.

Joseph J. COSTELLO, Superintendent, and Charles J. Hynes, Respondents.

Abdul Hakim, Petitioner,

v.

Charles Greiner, Superintendent, Sing–Sing Correctional Facility, Respondent.

Civil Action Nos. 97–CV–6362, 97–CV–6427 (DGT).

United States District Court, E.D. New York.

Aug. 10, 2000.

Perry S. Reich, Shapiro & Reich, Lindenhurst, NY, Larry W. Yackle, Boston, MA, for petitioners.

Hon. Charles J. Hynes, Kings County Dist. Atty., Brooklyn, NY by Amy Applebaum, Hon. Richard A. Brown, Queens County Dist. Atty. by John Castellano, for respondents.

*MEMORANDUM*

TRAGER, District Judge.

On May 4, 2000, the Court of Appeals granted a certificate of appealability in this case and in fourteen other habeas corpus cases. *See* Appendix A. The issue on which the certificate was granted is "whether a district court may dismiss a 28 U.S.C. § 2254 petition without providing an order which indicates that the court conducted a thorough review and independent analysis of the petition."

Of the fifteen cases that were consolidated to address this issue, thirteen were mine. Because the question certified in these cases suggests that decisions denying these petitions do not enjoy a presumption of regularity, to wit, that they were reached only after due consideration

of all issues raised, I take this opportunity to apprise the Court of Appeals—in aid of its appellate jurisdiction—of my practice in deciding habeas corpus petitions. *See United States v. Nichols,* 56 F.3d 403, 411 (2d Cir.1995) ("While an effective notice of appeal ... does divest the district court of its control over those aspects of the case involved in the appeal, a district court still may act in 'aid of the appeal.' ") (citation omitted).

The practice that I have followed in deciding state habeas petitions since the Spring of 1999 is this: When all of the papers have been collected and the petition is ready for consideration, I *personally* review the petition, responding papers, any state court decisions, as well as the relevant parts of the record. If a case appears to have substantial merit, I appoint counsel (if the petitioner appears pro se). If I am uncertain about the merits of the case I ask my law clerk to take a closer look and prepare a memorandum before determining whether to appoint counsel or to decide the case without doing so. If the case clearly appears to have no merit, I deny the petition summarily based upon my own personal and thorough review of the relevant parts of the record. Normally, when I do so I rely either on the opinion of the Appellate Division, if it contains a discussion of the relevant issue, or upon the discussion contained in the memorandum of law filed by the District Attorney or both. When the Appellate Division invokes its discretion, as the Second Circuit often does, to summarily dismiss some arguments as lacking sufficient merit to warrant discussion, the memorandum filed by the District Attorney often provides a more complete factual and legal context for those issues.

Additionally, when I believe the case warrants it, I write a thorough, detailed opinion explaining my reasons for denying the writ. Indeed, since adopting my present practice for handling habeas petitions last year, I have filed five such opinions, detailing legal issues which I believe were either novel or of some significance. *See Campbell v. Sabourin,* 37 F.Supp.2d 601 (E.D.N.Y.1999); *Sellan v. Kuhlman,* 63 F.Supp.2d 262 (E.D.N.Y.1999); *Leka v. Portuondo,* 76 F.Supp.2d 258 (E.D.N.Y. 1999) (86 pages); *Leka v. Portuondo,* 76 F.Supp.2d 258 (E.D.N.Y.1999) (denying certificate of appealability) (22 pages); *Elcock v. United States,* 80 F.Supp.2d 70 (E.D.N.Y.2000). I have also written a lengthy opinion justifying my grant of a petition for a writ of habeas corpus. *See Jones v. Stinson,* 94 F.Supp.2d 370 (E.D.N.Y.2000) (58 pages).

I feel particularly comfortable in employing this procedure for three reasons. First, the area of law is one in which I have developed a special expertise through nearly thirty years of teaching, practice, and judging. Second, the complexity of the procedural aspects of habeas law has been immeasurably increased with the passage of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), making the subject particularly difficult for law clerks, who serve only one year, to master. Third, and most importantly, it is precisely because I do not rely on law clerks that I feel that proceeding in this way is appropriate.

The summary procedure described above is the same one that I followed in the thirteen cases at issue here. I did not stop to write an opinion in these cases not only because they were meritless, but because of the enormous increase in the number of state habeas petitions since AEDPA became law.[1] Moreover, during

---

1. The following figures will give some sense

of the impact of this increase. Considering

this same period the Eastern District civil docket in general, including the number of other pro se cases, continued to grow. Indeed, in the calendar year 1999, there were 471 weighted filings per judge (including senior judges) in the Eastern District of New York—a case load which the Judicial Council of the Second Circuit recently concluded justified three additional judges in the Eastern District of New York.

The civil pro se cases, in particular, required my personal attention, as well as that of my law clerks. These filings include large numbers of pro se civil rights cases, and motions to summarily dispose of them, that require careful, individual attention by my clerks and then myself. Unlike pro se habeas cases, in which the petitioners have received full appellate review with the assistance of counsel, this is the first and only opportunity for these pro se civil rights plaintiffs. Spending scarce law clerk time drafting memoranda in every one of what Justice Jackson described almost a half century ago—when the number were much smaller—as the "floods of stale, frivolous, and repetitious petitions," *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953),[2] simply means less time and more delay for other more de-

serving pro se litigants who, unlike habeas petitioners, have never had the benefit of counsel.

While I do not believe it is appropriate, or within the power of the Court of Appeals, to instruct a district court judge that he or she may not summarily dispose of a case without any extended discussion, the practical effect of a ruling requiring any more than a statement that the petition has been thoroughly considered will result in substantial delays in deciding these habeas corpus cases—especially if more than a summary order is contemplated. Such a ruling will also divert a judge's personal attention from other cases that require it. Unlike the Second Circuit, which screens out hopeless cases by certificates of appealability "carefully processed for the judges by well-trained clerks assigned for the purpose," Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L.Rev. 142, 144, n. 9 (1970), judges of the district court can rely only on themselves and their limited chambers staff. Surely, it is ironic that a procedure that provides a litigant with more personal judicial consideration than they get from the Second Circuit should be the subject of question.

only the state habeas cases that I ultimately decided on the merits, the number of such cases assigned to me were as follows: 7 in 1994; only 3 in 1995; the number rose to 13 in 1996, the year the AEDPA was enacted; in 1997, the number tripled to 43; and in 1998, the number was 18. The extraordinary number of cases filed in 1997 is explainable by AEDPA's new one-year statute of limitations. 28 U.S.C. § 2244(d)(1). Thus, putting aside cases that were dismissed for failure to exhaust state remedies, voluntary withdrawals and other procedural reasons, the number of state habeas cases on my docket have more than doubled since 1994.

Accordingly, while it was relatively easy for my law clerks to draft detailed memoranda and for me to write complete opinions in

most state habeas cases in the mid 1990's, by early 1999 the combination of AEDPA's procedural complexities and the sheer volume of such cases overwhelmed my two law clerks. The number of pending state habeas cases on my docket that needed to be decided on the merits became unmanageable. Thus, I determined that I had to change the manner in which I was handling these cases and adopted my present practice.

2. I would note that in over six years as a United States District Judge, and apart from the instant cases, *see* Appendix A, I have decided over 100 petitions for a writ of habeas corpus on the merits. Approximately 35% were decided without any opinion. Not one of my denials has been reversed.

I cannot conclude without addressing one last issue. The question framed in the certificate of appealability appears to suggest that the lack of a detailed written opinion indicates a failure to conduct "a thorough review and independent analysis of the petition." Or, at least, that it is appropriate to question whether such an analysis took place. I do not believe that either suggestion is fair. On the contrary, the threshold issue here is whether a district judge should be able to incorporate by reference portions of the record or submissions by the parties that adequately apply the law to the facts of the case in reaching his or her determination, as opposed to simply rewriting significant parts of these papers.

Reliance on the reasons stated in the opinion of the Appellate Division as the basis for the denial of the writ hardly reflects the lack of "a thorough review and independent analysis of the petition." In fact, reliance on the Appellate Division decision, which, as a general rule, is entitled to deferential rather than de novo review, 28 U.S.C. § 2254(d)(1), seems particularly appropriate. *See Pinkney v. Keane*, 920 F.2d 1090, 1098–99 (2d Cir.1990) (noting that habeas corpus application is "simply another stage in the same case" and citing 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.2, at 387–88 (1988) in support of "the increased acceptance of the appellate analogy to federal habeas corpus"). Indeed, the Second Circuit often follows the practice of issuing summary orders, some published and some not published, affirming denials of habeas petitions based on the opinion of the district court. This practice is also followed in criminal and civil cases of all kinds. Does this practice—particularly in cases where the order is unpublished—reflect the absence of a thorough review and independent judgment?

Similarly, it is difficult to see why reliance on a well-drafted memorandum of law by the District Attorney reflects an absence of careful consideration. Only recently, in a summary order, a panel of the Second Circuit disposed of an appeal as follows:

> Defendant Jose Pina appeals from the judgment entered in the district court, upon his plea of guilty, convicting him of conspiring, in violation of 18 U.S.C. § 371, to violate various sections of Title 21 concerning the proper handling, packaging and distribution of prescription medication, see 21 U.S.C. §§ 331(a)-(c), (k), (t); 333(a)(2), (b)(1)(D); 353(e)(2)(A).
>
> We have considered whether we should vacate the defendant's plea because the conspiracy count of the indictment failed to charge a felony, and because this failure rendered the plea allocution defective. We find these arguments to be without merit.

*U.S. v. Aurora*, No. 98–1267, 2000 WL 979167, at *1 (2d Cir. July 13, 2000). This is an affirmance without any statement of explanation. It simply states a conclusory assertion that the arguments are without merit. Is such an order preferable to a statement pointing to the arguments set out in the memorandum of law filed by one of the parties?

I stop here, because I did not start to write a contentious brief—only to provide assurance that I *personally* "conducted a thorough review and independent analysis" before denying the thirteen petitions that have been consolidated for consideration of the issue certified. I have referred to the summary practice of the Court of Appeals only because I believe that district court judges should enjoy the same discretion in deciding meritless cases as the Court of Appeals enjoys. Those decisions should also enjoy the presumption that, however

brief the stated reasons, the result reflects that the judge has given the matter appropriate personal consideration.

\*　　\*　　\*　　\*　　\*　　\*

Two of the fifteen cases at issue here involve appeals from summary denials of habeas corpus petitions by Chief Judge Korman. He has authorized me to say that he joins in the discussion at pages 5–8 of this memorandum. Chief Judge Korman declines to file a statement in aid of the jurisdiction of the Court of Appeals because he believes that the appellate jurisdiction of the Second Circuit extends only to deciding whether or not the judgments denying the writ were legally correct, and not to instructing district court judges on how much discussion is required in a summary order. The latter issue is one addressed, if at all, to the Judicial Council of the Second Circuit. *See* 28 U.S.C. § 332(d)(1).

## APPENDIX A

The appeals of the orders denying or dismissing the petitions for a writ of habeas corpus in the following fourteen cases have been related to the instant case:

*Alcantara v. Keane,* No. 97–CV–1851(DGT) (E.D.N.Y. May 27, 1999) (2d Cir. No. 99–2387)

*Bannon v. Commissioner,* No. 98–CV–5559(DGT) (E.D.N.Y. June 8, 1999) (2d Cir. No. 99–2340)

*Chang v. Artuz,* 97–CV–2344(DGT) (E.D.N.Y. May 3, 1999) (2d Cir. No. 99–2309)

*Collins v. Stinson,* No. 99–CV–293(DGT) (E.D.N.Y. July 27, 1999) (2d Cir. No. 99–2497)

*Konstantin v. Hynes,* No. 98–CV–1481(DGT) (E.D.N.Y. April 9, 1999) (2d Cir. No. 99–2248)

*Rudenko v. Costello,* No. 97–CV–6362(DGT) (E.D.N.Y. April 9, 1999) (2d Cir. No. 99–2242)

*Miranda v. Bennet,* No. 99–CV–437(DGT) (E.D.N.Y. July 27, 1999) (2d Cir. No. 99–2718)

*Spencer v. Artuz,* No. 97–CV–2355(DGT) (E.D.N.Y. April 20, 1999) (2d Cir. No. 99–2304)

*Williams v. Senkowski,* No. 97–7050(DGT) (E.D.N.Y. April 20, 1999) (2d Cir. No. 99–2276)

*Johnson v. Keane,* No. 97–CV–5649(DGT) (E.D.N.Y. March 29, 1999) (2d Cir. No. 99–2277)

*Woodard v. Irvin,* No. 96–CV–1750(DGT) (E.D.N.Y. August 12, 1999) (2d Cir. No. 99–2524)

*Woodard v. Senkowski,* No. 97–CV–3072(DGT) (E.D.N.Y. August 12, 1999) (2d Cir. No. 99–2524)

*Defina v. Albaugh,* No. 99–CV–5064(ERK) (E.D.N.Y. October 27, 1999) (2d Cir. No. 99–2692)

*Gandarilla v. Artuz,* No. 99–CV–508(ERK) (E.D.N.Y. June 14, 1999) (2d Cir. No. 99–2531)